**In re RLS LEGAL SOLUTIONS, L.L.C. and Yandell Rogers III.**

**No. 09–04–526 CV.**

Court of Appeals of Texas, Beaumont.

Submitted on Dec. 21, 2004.

Decided Jan. 27, 2005.

Victor N. Corpuz, Kristin L. Bauer, Jackson Lewis, LLP, Dallas, for relators.

Glen W. Morgan, Mary F. Bradford, Reaud, Morgan & Quinn, LLP, Beaumont, for real party in interest.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Amy Maida sued RLS Legal Solutions, L.L.C. and Yandell Rogers III[1] (1) for various claims related to her employment. The employment agreement of December 7, 2001, has an arbitration provision, as follows:

15. Arbitration of Disputes. Any legal or equitable dispute or controversy arising under, out of, or in connection with or in relation to this Agreement; or arising out of, or related to the employment of Employee, the terms and conditions of employment, or the termination of Employee by the Company (other than worker's compensation claims), shall be resolved exclusively by binding arbitration.

RLS is before this Court on its second petition for writ of mandamus. In the first mandamus proceeding, we ordered the trial court to hold an evidentiary hearing on disputed material facts regarding the arbitration agreement. *See Rogers v. Maida,* 126 S.W.3d 643, 646 (Tex.App.-Beaumont 2004, orig. proceeding). This mandamus petition attacks an order denying RLS's motion to compel arbitration. The parties agreed the Federal Arbitration Act applies. *Id.* at 644.

A writ of mandamus will issue to correct a clear abuse of discretion when there is no adequate remedy at law. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753 (Tex.2001). The trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). When the trial court's decision rests on resolution of fact issues, the party opposing the trial court's decision must establish that the court could reasonably have reached only one decision. *Id.* at 839–40. The trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* at 840. A party erroneously denied the right to arbitrate under the Federal Arbitration Act has no adequate legal remedy and may seek reversal of the order by filing a petition for writ of mandamus. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d at 753.

There is a strong presumption favoring arbitration, but the presumption

---

1. We will refer to relators together as RLS.

arises only if a valid arbitration agreement exists. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 573. Maida says there was no enforceable agreement to arbitrate because RLS procured the arbitration agreement by economic duress. The trial court heard evidence and denied the motion to compel arbitration. In its first issue, RLS argues the trial court abused its discretion by not submitting Maida's allegation of economic duress to arbitration. In its second issue, RLS says Maida did not meet her burden of proof on the elements of economic duress. We consider these two issues together.

■■■ Economic duress occurs when one party takes unjust advantage of the other party's economic necessity or distress to coerce the other party into making an agreement. *See King v. Bishop*, 879 S.W.2d 222, 224 (Tex.App.-Houston [14th Dist.] 1994, no writ). It is a defense to the enforcement of the contract. *Id.* A party claiming duress must show a threat by the other party to do something which the other party had no legal right to do, the threat destroyed the free agency of the person to whom it was directed, the restraint caused by the threat was imminent, and the person against whom the threat was directed had no means of protection. *See Sudan v. Sudan*, 145 S.W.3d 280, 286 (Tex.App.-Houston [14th Dist.] 2004, no pet. h.).

RLS cites *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex.2001), and *Shearson Lehman Bros., Inc. v. Kilgore*, 871 S.W.2d 925, 927–28 (Tex.App.-Corpus Christi 1994, orig. proceeding) for the proposition that Maida's allegations of economic duress relate to the employment contract as a whole, rather than to the arbitration provision, and the entire matter therefore must be arbitrated. In

FirstMerit Bank, the purchasers of a mobile home signed a retail installment financing agreement. *See FirstMerit Bank*, 52 S.W.3d at 752. The agreement contained an "Arbitration Addendum," which required arbitration of any disputes. *Id.* at 752–53. When the mobile home was delivered, the purchasers attempted to revoke their acceptance. They claimed the home was defective and promised repairs were not made. *Id.* at 753. In determining the purchasers' defenses did not defeat arbitration, the Supreme Court held the defenses "must specifically relate to the Arbitration Addendum itself, not the contract as a whole, if they are to defeat arbitration." *Id.* at 756. The Supreme Court held:

> Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. (footnotes omitted).

*Id.* at 753–54. The initial question here is whether Maida's economic duress defense specifically relates to the arbitration provision. *See generally In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex.2002) ("courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision."); *see also Kilgore*, 871 S.W.2d at 928 ("whether there is a valid agreement to arbitrate is an initial question for the trial court and not the arbitrators").

■■■ Maida testified in support of her assertion the arbitration agreement was wrongfully procured by economic duress. She testified she objected to signing the agreement because of the arbitration clause and for other reasons. When asked whether she liked the arbitration clause, Maida stated:

I did not. In fact, I spoke with several of my attorney friends about the arbitration clause and the non-compete clauses. The arbitration clause was going to allow me not to be able to be in a position that I needed to be in now, and that is, to have someone represent me to help me where I feel like the company did me wrong, and that is, not pay me correctly, not pay me at all, and allow me to be in a position to have to quit so that I could not be making the kind of money that I had once made[.]

Maida also testified that she did not receive her regularly scheduled pay on Friday, November 16, 2001, for work already performed because she did not initially sign the agreement. Maida testified that she was told she would not be paid until she signed. In her affidavit, Maida stated as follows:

After I refused to agree to this arbitration clause, I was told that my payroll checks would not be direct deposited into my account until I signed the agreement and that I would not be paid until I signed the agreement. I had received my paychecks by direct deposit for three (3) years, but was told "that a phone call to cancel my direct deposit would be made to the payroll department unless I signed my agreement." ... So even though they held checks for money I had already earned and was entitled to, I was told that "I would not receive any more paychecks until I signed my agreement."

RLS stopped the direct deposit payment of Maida's salary. She was afraid she would be unable to meet her financial obligations without her regular compensation and benefits. Maida's affidavit further stated:

I needed my paycheck to meet my financial responsibilities since I am a single family income household provider. I had no way to pay my mortgage, vehicle note, car and homeowner's insurance as well as any household bills without my compensation checks so by their wrongful conduct they forced me to sign even though I vehemently objected to the arbitration clause.... I was entitled to be paid a salary and commissionable amount based on my personal sales and there was no clause whatsoever that provided that the company could withhold my earned pay for any reason, including forcing me to sign a new agreement. Therefore, the company coerced me into signing the arbitration agreement by wrongfully withholding pay to which I was contractually entitled.

Maida testified that when she finally signed and returned the agreement, she told RLS she was doing so under duress.

Maida testified that after signing and returning the agreement, she was given a manual check on November 19, 2001. Maida said that when she had asked why she had not been paid by direct deposit as usual, she was told her paycheck would be held until she signed the agreement. A co-worker also testified RLS threatened to withhold pay for work already performed until the agreements were signed. The co-worker testified that employees were told "If you guys don't get these things signed, no paychecks on Friday." The co-worker also stated "I needed my paycheck on Friday, so I signed it right then and there in the office."

In rebuttal, RLS offered evidence Maida was paid all amounts owed on every regularly scheduled payday in November and December 2001, and Maida received a manual check no later than November 19, 2001. RLS offered evidence Maida was to be paid under her old agreement until the new agreement was signed.

As the fact finder at the evidentiary hearing, the trial court was the exclusive

judge of the credibility of witnesses and the weight to be given their testimony. *See Harris v. Nelson*, 25 S.W.3d 917, 919–20 (Tex.App.-Beaumont 2000, no pet.). The trial court reasonably could have found Maida's testimony credible and not believed RLS's explanation. The economic duress defense and Maida's objection specifically related to the arbitration agreement itself, though Maida also objected to other provisions in the contract. The evidence was sufficient to support a determination that RLS withheld Maida's compensation for work already performed for the purpose of obtaining her agreement to arbitrate employment disputes, and that the withholding of her compensation for work already performed defeated Maida's free agency. *See generally Windham v. Alexander, Weston & Poehner, P.C.*, 887 S.W.2d 182, 185 (Tex.App.-Texarkana 1994, writ denied); *Simpson*, 724 S.W.2d at 109. On this record the trial court reasonably could have found the restraint was imminent and Maida had no means of protection from the threat. These facts differ from those in *In re Halliburton* because here the withholding of payment was for work already performed, and was not "merely [premising] continued employment on acceptance of new or additional employment terms." *See Halliburton*, 80 S.W.3d at 572. Even if she was not entitled to continued employment, payment was due for work already performed, and RLS was not legally entitled to condition that payment on her signing an agreement to arbitrate. The finding implicit in the order is that there was no valid, enforceable agreement to arbitrate because it was procured by economic duress. Relator has not shown that this decision was arbitrary and unreasonable, or that in resolving the fact issues the trial court could not reasonably have reached this decision. *See Walker v. Packer*, 827 S.W.2d at 839–40. Issues one and two are overruled.

In its third issue, RLS complains Maida's responses to requests for admissions were filed in bad faith and the trial court abused its discretion by not deeming the requests admitted. Maida contends RLS waived the issue by failing to present it to the trial court. With its reply to Maida's response, RLS provided a "Second Supplement to Motion to Compel Arbitration," in which RLS objected to Maida's responses and sought to have all of the requests deemed admitted. In its motion, RLS argued Maida had not provided any substantive answers, and that she had denied basic, undisputed facts, as well as facts she admitted in her deposition. The issue is preserved for review.

Rule 198.1 of the Texas Rules of Civil Procedure provides that a party may propound written requests for admissions. *See* Tex.R. Civ. P. 198.1. Rule 198.2(b) states as follows:

> (b) *Content of response.* Unless the responding party states an objection or asserts a privilege, the responding party must specifically admit or deny the request or explain in detail the reasons that the responding party cannot admit or deny the request. A response must fairly meet the substance of the request. The responding party may qualify an answer, or deny a request in part, only when good faith requires.

Tex.R. Civ. P. 198.2(b). If a response is not timely served, the requests are considered admitted without the necessity of a court order. *See* Tex.R. Civ. P. 198.2(c). The party who has requested admissions may move to determine the sufficiency of an answer or objection. *See* Tex.R. Civ. P. 215.4(a). "[A]n evasive or incomplete answer may be treated as a failure to answer[,]" and "[i]f the court determines that an answer does not comply with the requirements of Rule 198, it may order ei-

ther that the matter is admitted or that an amended answer be served." *Id.*

In support of its argument, RLS cites *Taylor v. Taylor*, 747 S.W.2d 940, 945 (Tex.App.-Amarillo 1988, writ denied), in which the court held that, once the trial court found there was no proper response to the requests and that the responses did not satisfy the requirement of the rule, "the court was authorized, if not required, by the rules to deem the matters admitted." RLS argues "The vast majority of the requests for admission go to similar, uncontroversial and basic information that has been independently established through documentary evidence. For example, Maida denied matters such as her income as reported in her W–2's for 1999, 2000, and 2001."

■ There is no indication the trial court found those responses which relate specifically to the withholding of the relevant check—for example, the responses to requests nos. 21, 25 and 26—were evasive or otherwise not in compliance with Rule 198. Rather, the trial judge's denial of the motion to compel arbitration indicates the judge believed the check was not paid timely, and therefore those three responses were properly denied. Even if some of the requests for admissions RLS labels "uncontroversial" should have been deemed admitted by the trial court, the trial court was not required to deem all the requests admitted as a discovery sanction and then compel arbitration. The failure to impose that result as a sanction was not an abuse of discretion. Issue three is overruled. The petition for writ of mandamus is denied.

PETITION FOR WRIT OF MANDAMUS DENIED.