**In re RLS LEGAL SOLUTIONS, LLC, and Yandell Rogers, III, Relators.**

No. 05–0290.

Supreme Court of Texas.

April 20, 2007.

---

**22.** 929 S.W.2d 121, 123 (Tex.App.-San Antonio 1996, writ denied).

**23.** *Supra* note 8.

**24.** Tex.R.App. P. 59.1.

Victor Navasca Corpuz, Kristin Leigh Bauer, Jackson Lewis LLP, Dallas, Roger S. McCabe, Mehaffy & Weber, Beaumont, for Relators.

Glen W. Morgan, Mary Ferguson Bradford, Reaud Morgan & Quinn, L.L.P., Beaumont, for Real Party in Interest.

PER CURIAM.

█ The court of appeals held that the trial court did not abuse its discretion in denying relators' motion to compel arbitration of this employment dispute on the basis that relators used economic duress to force the plaintiff to agree to arbitration. *In re RLS Legal Solutions, L.L.C.*, 156 S.W.3d 160, 165 (Tex.App.-Beaumont 2005). But the plaintiff's only evidence is that she was under duress to sign an employment agreement containing an arbitration provision; there is no evidence that she was under duress specifically to agree to arbitration apart from the other provisions of the agreement. We held in *In re FirstMerit Bank, N.A.,* that duress and other such defenses must "specifically relate to the Arbitration Addendum itself, not the contract as a whole, if they are to defeat arbitration. Defenses that pertain to the entire ... contract can be arbitrat-

ed." 52 S.W.3d 749, 756 (Tex.2001) (footnotes omitted). Accordingly, we grant relators' petition for mandamus to compel arbitration.

Relator RLS Legal Solutions, L.L.C. employed Amy Cobb Maida as a sales representative from 1997 to 2002. During the latter part of her employment, when relator Yandell Rogers was the chief financial officer of RLS, Maida signed several agreements to arbitrate disputes with RLS. But when RLS asked her to sign a new agreement in November 2001, she objected. The eight-page, single-spaced agreement contained numerous provisions related to term, compensation, non-competition, arbitration, and other subjects. Maida testified that RLS told her she would not be paid if she did not sign the agreement. RLS paid Maida a base salary every other Friday and a commission once each month by direct deposit to her account. On November 2 RLS made a $1,416.59 salary payment to her account, but it made no such payment on November 16, although it did make a direct deposit that day of $2,690.43 for her commission. Maida testified that she agonized over the weekend and signed the new agreement on Monday, November 19, specifically telling RLS she was under duress. At that time, RLS gave her a check for her salary. RLS contends that it prepared the check Friday but that Maida was not in the office that day to pick it up. Maida disputes that this happened.

█ The parties agree the Federal Arbitration Act, 9 U.S.C. §§ 1–16, applies to the arbitration provision within the employment agreement. Maida argues that the arbitration provision is not enforceable because RLS improperly withheld her salary payment to force her to accept the arbitration provision. We take Maida's version of the facts as true and assume, without deciding, that she has made out a

case of economic duress. But there is no evidence the duress she claimed RLS exerted on her was directed at her agreeing to the arbitration provision as distinct from the agreement as a whole. Both an affidavit by Maida and her trial testimony provide some evidence that she objected to the arbitration provision specifically. She stated in her affidavit:

> I was ... told ... that there were, "no exceptions" to the "new" arbitration clause that I was made to sign and that "nothing was negotiable or up for discussion."

*    *    *

> After I refused to agree to this arbitration clause, I was told that my payroll checks would not be direct deposited into my account until I signed the agreement and .... "that a phone call to cancel my direct deposit would be made to the payroll department unless I signed my agreement". I was told that "I just could not be paid unless I signed the arbitration agreement contained in the employment contract, that it was against company policy and that everyone had to do so." So even though they held checks for money I had already earned and was entitled to, I was told that "I would not receive any more paychecks until I signed my agreement." Despite these threats, I refused to sign the arbitration agreement based on the fact that it was given to me on such short notice and I needed an opportunity to read and review the agreement.

She further stated that "by their wrongful conduct, [my superiors] forced me to sign even though I vehemently objected to the arbitration clause." At trial, she testified that she feared

> [t]he arbitration clause was going to allow me not to be able to be in a position that I needed to be in now, and that is, to have someone represent me to help

me where I feel like the company did me wrong, and that is, not pay me correctly, not pay me at all, and allow me to be in a position to have to quit so that I could not be making the kind of money that I once made.

Neither her affidavit nor her trial testimony provide any evidence that the arbitration provision was the only provision to which she objected, or that it was the only provision she was under duress to sign. On the contrary, she testified at trial that she was also dissatisfied with the compensation and commission provisions and the non-compete provision of the new agreement, and had discussed these provisions and the arbitration provision with friends and family. She testified only that she objected to the new agreement and told RLS that she did not want to sign it.

The court of appeals correctly concluded that "[t]he economic duress defense and Maida's objection specifically related to the arbitration agreement itself" and that "[t]he evidence was sufficient to support a determination that RLS withheld Maida's compensation for work already performed for the purpose of obtaining her agreement to arbitrate." 156 S.W.3d at 165. But it also noted that Maida herself testified that she "also objected to other provisions in the contract." *Id.* Maida does not contest this characterization of her testimony, and there is no evidence to show RLS was trying to force her agreement to the arbitration provision and not other provisions as well. Maida contends that the duress she claims she was under need not have related exclusively to the arbitration provision for her to be entitled to a judicial determination of her defense. But Maida's argument, carried to its logical conclusion, would defeat the rule in *First-Merit* in any case where the arbitration provision is only a clause in a larger agreement, since duress to force execution of an

agreement containing an arbitration provision also forces consent to arbitration. Unless the arbitration provision alone was singled out from the other provisions, the claim of duress goes to the agreement generally and must be decided in arbitration.

Accordingly, without hearing oral argument, TEX.R.APP. P. 52.8(c), we conditionally grant relators' petition for writ of mandamus and direct the trial court to grant relators' motion to compel arbitration. We are confident the court will comply promptly. Our writ will issue only if it does not.