COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


NUMBER 13-07-210-CV



HONRUBIA PROPERTIES, 

LTD., ET AL., Appellants,


v.



TODD GILLILAND, Appellee.

 


NUMBER 13-07-249-CV



IN RE: HONRUBIA PROPERTIES, LTD., ET AL.,
 

 


On petition for writ of mandamus and on appeal from 


the 206th District Court of Hidalgo County, Texas


 


MEMORANDUM OPINION



Before Justices Yañez, Benavides, and Vela


Memorandum Opinion by Justice Yañez


 Relators, Honrubia Properties, Ltd., Honrubia Properties, GP, LLC, Vincent F.
Honrubia, M.D., Jenrob Investments, L.P., Robjen Investments, LLC, Roberto Yarto, and
South Padre Bay Development, LLC, (collectively "Honrubia") seek review of the trial
court's denial of their motion to compel arbitration through an interlocutory appeal and a
petition for writ of mandamus. For the reasons discussed below, we conditionally grant the
petition for mandamus, Cause No. 13-07-249-CV, and, granting full relief under our
mandamus jurisdiction, we dismiss as moot the interlocutory appeal, Cause No. 13-07-210-CV. See Am. Std. v. Brownsville Indep. Sch. Dist., 196 S.W.3d 774, 781 (Tex. 2006). 

I. Background


 The underlying dispute is an action between partners to a limited partnership
agreement. During the summer of 2004, relators ,Vincent Honrubia, M.D., and Robert
Yarto, and real party in interest, Todd Gilliland, entered a partnership to purchase land on
South Padre Island and to build and sell condominiums on that land. Gilliland
subsequently brought suit against relators claiming breach of the partnership agreement
and fraud. Relators claim that the dispute at issue falls within the scope of an arbitration
clause contained in the partnership agreement, and the trial court abused its discretion in
failing to order the parties to arbitrate.

II. Lack of Pleadings


 Gilliland contends that Honrubia has "no pleadings in support of its motion to compel
arbitration." According to Gilliland, Honrubia agreed to amend its pleadings in response
to special exceptions (1) but failed to do so, and Honrubia's pleadings fail to indicate that
Honrubia is seeking arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§
1-16 (West 2000 & Supp. 2006).

 After reviewing the record, we cannot agree with Gilliland's argument. Honrubia's
original answer in the lawsuit included, inter alia, a motion to compel arbitration. After
Gilliland filed special exceptions, Honrubia filed two supplemental motions to compel
arbitration. Honrubia's pleadings clearly address and include its motion to compel
arbitration.

 Moreover, a review of Honrubia's pleadings indicate that Honrubia is seeking
arbitration under either the FAA or state law. Honrubia's pleadings include a copy of the
contract at issue, which references arbitration under the "Federal Arbitration Rules." 
Honrubia's supplemental motion and brief in support of its motion to compel arbitration
references "[f]ederal and state law," and states that "Texas courts have the power to
compel arbitration under the Federal Arbitration Act. . . ." Honrubia's motion further
discusses when arbitration clauses "are to be enforced under the FAA." We conclude that
Honrubia's pleadings give fair notice that it is seeking arbitration under the FAA. 

III. Adequacy of Pleadings for Arbitration Under FAA


 Gilliland contends that the affirmative defense of arbitration under the FAA was
neither pleaded nor tried by consent; therefore, the affirmative defense was waived. We
have previously found that Honrubia had pleadings in support of its claim for arbitration
under the FAA; accordingly, we will not further address this argument herein. See Tex. R.
App. P. 47.1. 

IV. Federal or State Arbitration 


 The parties dispute whether this matter is governed by the FAA or the Texas
General Arbitration Act ("TGAA"). See 9 U.S.C. §§ 1-16; Tex. Civ. Prac. & Rem. Code
Ann. §§ 171.001-.098 (Vernon 2005); In re Educ. Mgmt. Corp., 14 S.W.3d 418, 422 (Tex.
App.-Houston [14th Dist.] 2000, orig. proceeding) (holding that question of whether
transaction affects interstate commerce, and thus whether federal act governs, is one of
fact where arbitration agreement is silent as to application of federal or Texas act). The
agreement provides:

 Arbitration proceedings to resolve Disputes will be conducted under the
auspices and the commercial arbitration rules of the AAA pursuant to the
Federal Arbitration Rules of the AAA at Dallas, Dallas County, Texas. 
Whether such Dispute will be subject to arbitration will likewise be
determined in such arbitration as will the determination as to whether all
procedural conditions precedent to arbitration have been satisfied. If Title 9
of the United States Code is inapplicable to the Dispute for any reason, such
arbitration must be conducted pursuant to the Texas General Arbitration Act
(i.e. Chapter 171 of the Texas Civil Practice & Remedies Code) and in
accordance with this Article XXII and the commercial arbitration rules of the
AAA. 


Based on the plain language of the agreement, the parties intended to arbitrate under the
FAA given the contract's reference to the "Federal Arbitration Rules" and "Title 9 of the
United States Code," and only agreed to arbitrate under the TGAA if the FAA were
"inapplicable to the Dispute for any reason." We conclude that the agreement includes an
express agreement to arbitrate under the FAA. 

 Even if the express terms of the contract did not control our disposition of this issue,
we would nevertheless still conclude that the contract involves commerce. The FAA
"applies to all suits in state or federal court when the dispute concerns 'a contract
evidencing a transaction involving commerce.'" Jack B. Anglin Co., Inc. v. Tipps, 842
S.W.2d 266, 269-70 (Tex. 1992) (orig. proceeding) (quoting 9 U.S.C.S. § 2 (2000)); In re
Profanchik, 31 S.W.3d 381, 384 (Tex. App.-Corpus Christi 2000, orig. proceeding). The
United States Supreme Court has held that the word "involving" in the FAA is broad and
the functional equivalent of "affecting," signaling Congress's intent to exercise its
Commerce Clause powers to the fullest. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S.
265, 268 (1995); L&L Kempwood Assocs., L.L.P., v. Omega Builders, Inc., 9 S.W.3d 125,
127 (Tex. 1999) (orig. proceeding) (per curiam). In the instant case, one of the
condominium units that was constructed by the partnership was sold to an out-of-state
purchaser. Accordingly, the contract evidenced interstate commerce. Serv. Corp. Int'l v.
Lopez, 162 S.W.3d 801, 807-08 (Tex. App.-Corpus Christi 2005, no pet.); Stewart Title
Guar. Co. v. Mack, 945 S.W.2d 330, 333 (Tex. App.-Houston [1st Dist.] 1997, orig.
proceeding); see also Anglin, 842 S.W.2d at 270. We conclude that the transaction at
issue is governed by the FAA.

V. Standard of Review


 A writ of mandamus will issue to correct a clear abuse of discretion when there is
no adequate remedy by appeal. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).
A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as
to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or
apply the law. In re Ford Motor Co., 165 S.W.3d 315, 317 (Tex. 2005). The relator has
the burden to establish that the trial court abused its discretion. See id. If a trial court
erroneously denies a party's motion to compel arbitration under the FAA, the movant has
no adequate remedy at law and is entitled to a writ of mandamus. In re Nexion Health at
Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005); Serv. Corp. Int'l, 162 S.W.3d at 808. 

VI. Validity and Scope of the Arbitration Agreement


 A party seeking to compel arbitration by a writ of mandamus must establish the
existence of a valid agreement to arbitrate under the FAA and show that the claims in
dispute are within the scope of the agreement. In re Bank One, N.A., 216 S.W.3d 825, 826
(Tex. 2007) (per curiam); In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex.
2005) (orig. proceeding). In determining the validity of agreements to arbitrate which are
subject to the FAA, we generally apply state-law principles governing the formation of
contracts. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006) (citing First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Whether a valid arbitration
agreement exists is a legal question subject to de novo review. Am. Std., 196 S.W.3d at
781. If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the
party opposing arbitration to prove his defenses. J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003). 

 Once a valid agreement to arbitrate has been established, the court must then
determine whether the nonmovants' claims fall within the scope of the arbitration clause. 
In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). To determine whether an
existing arbitration agreement covers a party's claims, a court must "focus on the
complaint's factual allegations rather than the legal causes of action asserted." Id. at 754. 
Federal policy embodied in the FAA favors agreements to arbitrate and courts must resolve
any doubts about an arbitration agreement's scope in favor of arbitration. Id. at 753. If the
arbitration agreement encompasses the claims and the party opposing arbitration has
failed to prove its defenses, the trial court has no discretion but to compel arbitration and
stay its own proceedings. Id. at 753-54; D.R. Horton, Inc. v. Brooks, 207 S.W.3d 862, 866-67 (Tex. App.-Houston [14th Dist.] 2006, no pet.); Feldman/Matz Interests, L.L.P. v.
Settlement Capital Corp., 140 S.W.3d 879, 883 (Tex. App.-Houston [14th Dist. 2004, no
pet.).

 Under the contract, the parties agreed to utilize alternative dispute resolution
procedures to resolve potential disputes between the partners. The contract provides:

 [T]he Partners agree that if any dispute, claim, or controversy arises between
or among them, including any dispute between a Partner(s) and the
Partnership, relating to the affairs of the Partnership or the application of this
Agreement whether in contract, tort, equity, or otherwise (the "Dispute"), the
alternative dispute resolution procedures specified in this Article (the "ADR")
will be used to resolve such Dispute.


The contract further specifies a three-phase method of dispute resolution: direct
negotiation, mediation, and arbitration. Gilliland signed this agreement. Following the
dispute between Gilliland and relators, the parties attempted to resolve their dispute by
direct negotiation and mediation; however, neither method was successful. 

 We conclude that Honrubia has established a valid agreement to arbitrate, and
Gilliland's claims for fraud, statutory fraud, and conversion fall squarely within the broad
scope of the arbitration provision which expressly covers "any dispute, claim, or
controversy" between the partners "relating to the affairs of the Partnership or the
application of this Agreement whether in contract, tort, equity, or otherwise." See D. Wilson
Constr. Co., 196 S.W.3d at 783.

 Because an order denying arbitration must be upheld if it is proper on any basis
considered by the trial court, we will address all of Gilliland's alleged defenses to the
agreement. See In re H.E. Butt Grocery Co., 17 S.W.3d 360, 367 (Tex. App.-Houston
[14th Dist.] 2000, orig. proceeding); City of Alamo v. Garcia, 878 S.W.2d 664, 665 (Tex.
App.-Corpus Christi 1994, no writ).

VII. Waiver


 There is a strong presumption against waiver under the FAA. In re D. Wilson
Constr. Co., 196 S.W.3d at 783; see In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 763
(Tex. 2006) (orig. proceeding). A "heavy burden of proof" is required to establish waiver
of arbitration rights, and the court must resolve all doubt in favor of arbitration. In re Bruce
Terminix Co., 988 S.W.2d 702, 702 (Tex. 1998). Waiver occurs only where "a party has
acted inconsistently with its right to arbitrate and such actions prejudiced the other party." 
In re Oakwood Homes, 987 S.W.2d 571, 574 (Tex. 1999). The standard for determining
waiver of the right to arbitration is the same under both the TGAA and the FAA. Sedillo v.
Campbell, 5 S.W.3d 824, 826 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (combined
appeal and orig. proceeding).

 Waiver of an arbitration right must be intentional. EZ Pawn Corp. v. Mancias, 934
S.W.2d 87, 89 (Tex. 1996); In re Certain Underwriters at Lloyd's, 18 S.W.3d 867, 872 (Tex.
App.-Beaumont 2000, orig. proceeding). Merely taking part in litigation is not enough
unless a party "has substantially invoked the judicial process to its opponent's detriment." 
In re Vesta, 192 S.W.3d at 763 (quoting In re Serv. Corp. Int'l, 85 S.W.3d 171, 174 (Tex.
2002)). To substantially invoke the judicial process, a party must make a specific and
deliberate act after suit has been filed that is inconsistent with its right to arbitrate. Sedillo,
5 S.W.3d at 827; Nationwide of Bryan v. Dyer, 969 S.W.2d 518, 521 (Tex. App.-Austin
1998, no pet.). Actions that raise the issue of waiver may include some combination of
filing an answer, setting up a counterclaim, pursuing extensive discovery, moving for a
continuance, and failing to timely request arbitration. See In re Certain Underwriters at
Lloyd's, 18 S.W.3d at 872-73; Sedillo, 5 S.W.3d at 827; Central Nat'l Ins. Co. v. Lerner,
856 S.W.2d 492, 494 (Tex. App.-Houston [1st Dist.] 1993, orig. proceeding). The question
of waiver depends on the individual circumstances of each case. Sedillo, 5 S.W.3d at
827. Delay alone generally does not establish waiver. In re Vesta, 192 S.W.3d at 763. 

 In the instant case, Gilliland asserts that relators (1) incurred almost $200,000 in
expenses and in attorneys' fees; (2) deposed Gilliland for more than five hours; (3) filed
five motions to quash or for protective orders; and (4) have not written to the AAA
requesting that the case be set for arbitration. Gilliland also argues that relators filed a
counterclaim against Gilliland and requested expedited discovery in a companion case
involving the construction contract between relator, Tortuga South Padre Island, LP, and
Gilliland's corporation, First ATG Corp. This companion case was later consolidated with
the instant matter.

 First, Gilliland failed to present his waiver argument to the trial court. Accordingly,
this issue is not preserved for our review. See Tex. R. App. P. 33.1. Second, the parties
entered a Rule 11 agreement pertaining to discovery, which specifically states that "the
parties agree that neither this Rule 11 Agreement nor the consolidation shall in any way,
directly or indirectly, increase or decrease, create or waive, or otherwise impair or affect
the rights, obligations and defenses the parties may have under the pending motions to
compel arbitration and transfer venue." Under such circumstances, we will not find that the
affirmative pleadings and discovery request constitutes waiver.

 Moreover, given the applicable burden of proof, Gilliland has not shown that relators
substantially invoked the judicial process. See, e.g., In re Vesta Ins. Group, Inc., 192
S.W.3d at 764 (finding no substantial invocation of the judicial process to opponent's
detriment where litigation went on for two years because the relators engaged in minimal
discovery and the real party in interest failed to demonstrate sufficient prejudice to
overcome the strong presumption against waiver); EZ Pawn Corp, 934 S.W.2d at 91
(finding no substantial invocation of the judicial process to opponent's detriment where the
movant answered the suit, participated in a court-ordered telephone docket control
conference, conducted discovery, and entered into an agreed order resetting the case for
a later trial date). Further, Gilliland fails to allege or prove that he suffered prejudice as a
result of relator's actions. See Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494, 499-500
(Tex. App.-San Antonio 2000, no pet.) ("However, Arnold did not submit any evidence to
the trial court in support of its general allegations [of prejudice].") Accordingly, based on
the record at issue, we must reject Gilliland's waiver argument.

VIII. Unconscionability
 Gilliland contends that the arbitration clause is substantively unconscionable
because arbitration would be prohibitively expensive. The arbitration agreement provides
that the costs of arbitration will be borne by the non-prevailing parties, or "as otherwise
allocated" between the parties. The agreement further provides that each party will
separately bear the costs of his or her own attorneys, witnesses, representatives, and
experts in connection with arbitration.

 Unconscionability has two different aspects. Substantive unconscionability refers
to the fairness of the arbitration provision itself, whereas procedural unconscionability
refers to the circumstances surrounding adoption of the arbitration provision. In re Palm
Harbor Homes, Inc., 195 S.W.3d at 677. Claims of procedural and substantive
unconscionability are properly considered by courts in determining the validity of an
arbitration provision. Id. A claim that arbitration is so costly that it renders an arbitration
agreement unconscionable is a claim pertaining to substantive unconscionability. 

 In certain circumstances, arbitration can be so cost-prohibitive it effectively
precludes a litigant from exercising his statutory right to seek redress. In re FirstMerit
Bank, N.A., 52 S.W.3d at 756 (citing Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90
(2000)). In such a case, the arbitration agreement may be invalidated. Id. However, the
party opposing arbitration must prove the likelihood of incurring such substantial costs
through "some specific information." See id. (quoting Green Tree Fin. Corp., 531 U.S. at
92). Whether or not arbitration fees make the agreement to arbitrate unconscionable is
something that must be determined on a case-by-case basis. Cf. Green Tree Fin. Corp.,
531 U.S. at 92; Olshan Found. Repair Co. v. Ayala, 180 S.W.3d 212, 218 (Tex. App.-San
Antonio 2005, pet. denied) (Angelini, J., dissenting). 

 We consider the party opposing arbitration's ability to pay the arbitration fee and the
actual amount of the fee in relation to the amount of the underlying claim. Olshan Found.
Repair Co., 180 S.W.3d at 216; (2)
 see also In re Luna, 175 S.W.3d 315, 328 (Tex.
App.-Houston [1st Dist.] 2004, orig. proceeding). We may also consider the expected cost
differential between arbitration and litigation in court. See James v. McDonald's Corp., 417
F.3d 672, 680 (7th Cir. 2005); Cooper v. MRM Inv. Co., 367 F.3d 493, 511 (6th Cir. 2004);
Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556 (4th Cir. 2001).

 Gilliland produced evidence that his total cost of arbitration, with the AAA as
specified in the partnership agreement, would be approximately $15,000 to $20,283, plus
expenses and any costs charged by an arbitrator for a "study period." Gilliland testified that
he could not pay this amount to arbitrate; he has no savings or assets; he is being sued
for approximately $79,000; his corporation, First ATG Corp., owns several houses, for
which he owes Texas State Bank over $2 million pursuant to construction loans; he works
as a project developer earning $7,500 per month; his wife works as a classroom teacher
earning $45,000 annually; he supports his wife and two minor children; and he has
consumer debt totaling $30,000 or more. Gilliland thus presented some evidence
pertaining to the potential arbitration costs and his ability to pay the arbitration costs. 

 Honrubia contends, in response, that Gilliland failed to: (1) prove that potential
arbitration expenses are excessively disproportionate to the amount in dispute; (2) prove
that he would incur the alleged expenses; (3) account for AAA rules allowing for waiver of
fees or deferred fees; (4) prove that arbitration is more expensive than litigation; and (5)
prove that he cannot afford arbitration fees and expenses. According to Honrubia, Gilliland
possesses additional assets with which to fund arbitration, he has both education and skills
necessary to earn money to pay the expenses, and Gilliland's wife has income which
should be considered in determining whether the arbitration expenses are so excessive as
to render the agreement unconscionable. 

 Under the particular circumstances presently before us, we agree with Honrubia. 
According to Gilliland's pleadings, Gilliland is seeking $4,000,000 in compensatory
damages, plus punitive damages, attorney's fees, and costs. Thus, the actual amount of
the fee, which would be approximately $15,000 to $20,283, plus expenses and any costs
charged by an arbitrator for a "study period," is not extremely disproportionate in relation
to the amount of the underlying claim. The record is devoid of evidence pertaining to the
expected cost differential between arbitration and litigation in court. The record indicates
that the AAA may defer or waive some of the fees associated with arbitration, but Gilliland
has failed to adduce evidence indicating that he is unable to obtain reduced or waived
fees. (3) Gilliland and his wife have disclosed approximately $135,000 in gross annual
income, thus arbitration costs would range from 11% to 15% of his gross income. Further,
as indicated by Honrubia, Gilliland is the sole shareholder of First ATG Corp. Although
Gilliland has testified that this corporation owns several houses, "all of which are heavily
encumbered," and for which he owes over $2 million pursuant to construction loans,
Honrubia asserts that Gilliland has failed to plead or prove that this company is unable to
pay Gilliland's share of the arbitration expenses. In this regard, the record indicates that
Gilliland's finances are complicated, involving at least one wholly owned corporation, and
possibly other wholly or largely-owned corporations. Further, it is apparent that Gilliland's
income stream is not consistent insofar as his work involves construction projects which
must be sold prior to the realization of profit. We conclude that, based on the record
before us, Gilliland has not shown that the arbitration agreement at issue is substantively
unconscionable due to prohibitive costs. See In re FirstMerit Bank, N.A., 52 S.W.3d at
756.

IX. Fraud in the Inducement


 Gilliland further argues that the arbitration agreement was fraudulently induced. 
According to Gilliland's argument, he believed that the lawyer drafting the partnership
agreement was representing the partners jointly; however, the lawyer, in fact, represented
one of the other partners to the agreement. Gilliland was unaware that he was left out of
the general partnership and was unaware the contract included an arbitration agreement. 
Gilliland also asserts that he was provided the partnership agreement under time
constraints which did not "reasonably" permit him to review the document.

 The elements of fraudulent inducement are: (1) a material representation was
made; (2) the representation was false; (3) when the representation was made, the
speaker knew it was false or made it recklessly without any knowledge of the truth and as
a positive assertion; (4) the speaker made the representation with the intent that the other
party should act upon it; (5) the party acted in reliance on the representation; and (6) the
party thereby suffered injury. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001)

DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990). If the defense of
fraudulent inducement pertains to the execution of the entire contract rather than the
arbitration provision itself, the claim is subject to arbitration. In re FirstMerit Bank, N.A., 52
S.W.3d at 756; see In re RLS Legal Solutions, LLC, 221 S.W.3d 629, 630 (Tex. 2007)
(orig. proceeding) (per curiam). 

 In the instant case, there is no evidence that Honrubia made any false material
representations with regard to the arbitration agreement itself. See In re FirstMerit Bank,
N.A., 52 S.W.3d at 756; In re Whitfield, 115 S.W.3d 753, 757 (Tex. App.-Beaumont 2003,
orig. proceeding). Thus, the alleged fraudulent inducement is an issue that must be
considered by an arbitrator. In re FirstMerit Bank, N.A., 52 S.W.3d at 756. Absent fraud,
misrepresentation, or deceit, parties are bound by the terms of the contract they sign,
regardless of whether they read it or thought it had different terms. In re McKinney, 167
S.W.3d 833, 835 (Tex. 2005) (per curiam); see EZ Pawn Corp., 934 S.W.2d at 90 (holding
that a party who has the opportunity to read an arbitration agreement and signs it is
charged with knowing its contents). Accordingly, we decline to invalidate the arbitration
addendum based on fraud in the inducement. 

X. Condition Precedent


 Gilliland contends that relators did not satisfy a condition precedent to formation of
the contract containing the arbitration provision. Gilliland argues that the contract required
each partner to make an initial capital contribution to the partnership prior to June 16,
2004, and the partners failed to make the required contributions. 

 We do not agree with Gilliland's argument. First, we would note that the addendum
to the contract, which allegedly required the infusion of capital contributions by a specified
date, fails to include the specific dollar amounts that each partner was required to
contribute. While the addendum included blank lines for the fair market value and adjusted
tax basis for each initial capital contribution, those blanks were not completed with specific
amounts. Accordingly, we cannot conclude that the contract required, as a condition
precedent to its formation, the infusion of unspecified capital contributions by a specific
date. Further, it is apparent from the record that the partners to the agreement conducted
themselves as though the contract was valid and in existence despite the apparent lack of
initial capital contributions. The partners contributed funds, filed a certificate of limited
partnership, purchased property, obtained loans, conducted board meetings, and
constructed and sold condominiums. In fact, Gilliland's claims in the underlying lawsuit
depend on the existence of the contract at issue. See In re FirstMerit Bank, N.A., 52
S.W.3d at 756. 

XI. Merger


 Gilliland further asserts that there were existing oral agreements and understandings
which were never merged into the partnership agreement, despite the existence of a
"merger" clause in the partnership agreement, because the separate agreements were not
between the same parties and did not involve the same subject matter. Gilliland thus
contends that "the failure of merger of the written partnership agreement and the separate
oral agreements precludes enforcement of the arbitration clause in the written partnership
agreement." 

 Gilliland fails to explain how an alleged failure of the merger doctrine, if indeed there
is any such failure in this case, would extinguish or eliminate the agreement to arbitrate
contained in the partnership. See Tex. R. App. P. 38.1(h). Accordingly, we reject this
theory as a defense to arbitration.

XII. Conclusion


 A party denied the right to arbitration under the FAA has no adequate remedy by
appeal and is entitled to mandamus relief to correct a clear abuse of discretion. See L&L
Kempwood Assocs., L.P., 9 S.W.3d at 128. Because we conclude that the trial court
clearly abused its discretion in denying arbitration of the parties' dispute, we conditionally
grant mandamus relief. We direct the trial court to vacate its order denying arbitration and
to issue an order compelling arbitration. We are confident that the trial court will comply
and our writ will issue only if it does not. Having finally disposed of the petition for
mandamus in Cause No. 13-07-249-CV, we dismiss as moot the interlocutory appeal in
Cause No. 13-07-210-CV. See In re D. Wilson Constr. Co., 196 S.W.3d at 781. 



 

 LINDA REYNA YAÑEZ,

 Justice





Memorandum opinion delivered and filed 

this the 11th day of October, 2007.





1. The special exceptions that Gilliland references pertain to "Defendants' First Amended Original
Answer, Counterclaim and Application for Injunctive Relief," filed in trial court cause no. C-1889-05-D, and do
not reference arbitration. Honrubia's motion to compel arbitration was included in "Defendant's Motion to
Transfer Venue, and Subject thereto, Motion to Compel Arbitration and Motion to Dismiss and Original
Answer," filed in trial court cause no. C-2657-05-D. 
2. Under certain circumstances, as in employment disputes, courts may examine the effect of a
cost-splitting provision on similarly situated potential litigants, as opposed to its effect merely on the actual
plaintiff in any given case. See, e.g., Morrison v. Circuit City Stores, 317 F.3d 646, 663 (6th Cir. 2003). 


3. According to an affidavit submitted by Frank Zotto, vice president of case management at the
American Arbitration Association, this matter would be governed by the commercial rules of the AAA, and
under those rules, the AAA may, in the event of extreme hardship on the part of any party, defer or reduce
its administrative fees.