



# MEMORANDUM OPINION

No. 04-09-00572-CV

**Drew ROICKI,**
Appellants

v.

**Kortnee LAMARRE**,
Appellees

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 350091, the Honorable David J. Rodriguez presiding[1]

No. 04-09-00667-CV

**IN RE Drew ROICKI**

Original Mandamus Proceeding[2]

Opinion by:    Marialyn Barnard, Justice

Sitting:       Karen Angelini, Justice
               Phylis J. Speedlin, Justice
               Marialyn Barnard, Justice

Delivered and Filed: March 3, 2010

AFFIRMED; PETITION FOR WRIT OF MANDAMUS DENIED

---

[1] This proceeding arises out of Cause No. 350091, styled *Kortnee M. Lamarre v. Drew Roicki*, pending in the County Court at Law No. 3, Bexar County, Texas, the Honorable David J. Rodriguez presiding. However, the challenged order was signed by the Honorable H. Paul Canales, presiding judge of the County Court at Law No. 2, Bexar County, Texas.

[2] This proceeding arises out of the same trial court proceeding as the interlocutory appeal.

In these consolidated proceedings, Drew Roicki ("Roicki") complains of the trial court's August 21, 2009 order denying his motion to compel arbitration. We affirm the trial court's order denying the motion to compel arbitration and deny the petition for writ of mandamus.

## BACKGROUND

The underlying dispute arose out of a vehicle transaction in which Roicki sold a vehicle to Kortnee Lamarre ("Lamarre"). Lamarre filed suit against Roicki on June 5, 2009, alleging Roicki sold her a vehicle that had previously sustained flood damage. Lamarre asserted the following causes of action in her original petition: (1) deceptive trade practices; (2) negligence; (3) negligent misrepresentation; (4) negligent hiring, supervision, and/or management; and (5) breach of contract.

On July 9, 2009, Roicki filed a motion to compel arbitration, asserting Lamarre agreed to arbitration by signing the purchase agreement that contained an arbitration provision on July 13, 2008. On August 7, 2009, Lamarre filed a response to the motion and attached an affidavit. Lamarre contends in her response that she did not know what the document was that she signed on July 13, 2008 because she was not allowed to read it and she was never given a copy. In the uncontroverted affidavit, Lamarre asserts that prior to July 11, 2008 there were four meetings between Lamarre and Roicki to examine the vehicle before purchase. During the meetings, Lamarre alleges she asked Roicki several times about the history and nature of the salvage title on the vehicle, and each time Roicki denied that the vehicle had been in a flood. On July 11, 2008, Lamarre asserts she signed a "bill of sale." On July 13, 2008, Lamarre went to Roicki's home to pick up the vehicle, but Roicki was not at home. She claims that she was told to wait outside for Roicki's mother because there was additional paperwork for her to sign. Lamarre alleges that after waiting outdoors in the hot sun for thirty minutes, Roicki's mother came out and asked her to wait longer because she needed to sign another document that she had not signed on July 11, 2008. Lamarre claims she asked what

document was missing, and Roicki's mother replied that it was "a formality required by the state that they are required to keep on file for their dealership." After waiting outside for another fifteen minutes, Lamarre asserts Roicki's mother returned with the document and showed her where to sign. Lamarre contends she asked what the document was, and Roicki's mother told her again "that it was a form required by the state, a formality, and that [she] was required to sign in order to take the car." Lamarre further asserts in her affidavit that "[w]hile attempting to read it, Defendant's mother interrupted me and insisted that I sign the form before taking the vehicle. She made it clear that signing this document was not optional." Lamarre contends she signed the document and asked for a copy for her records, to which Roicki's mother responded that she did not need a copy since it was just something to keep on file for the state. On her drive home in the vehicle the check engine light came on and there were several mechanical issues that ensued. Lamarre asserts she tried to return the car, but she could not find anyone to speak with. After a few weeks, she received a "flood title" in the mail. Lamarre concludes she immediately called Roicki to reverse the deal, but he refused.

On August 21, 2009, the trial court held a hearing on Roicki's motion to compel arbitration and denied the motion without specifying the reason. This consolidated interlocutory appeal and petition for writ of mandamus ensued.[3]

---

[3] In the motion to compel arbitration, Roicki did not specify whether the arbitration agreement was enforceable under the Federal Arbitration Act ("FAA"), the Texas Arbitration Act ("TAA"), or the common law. Roicki now contends the arbitration agreement is enforceable under the FAA, TAA, and the common law. Because we have determined the trial court did not abuse its discretion in denying the motion to compel arbitration based on the issues presented to us, we do not find it necessary to determine whether the arbitration agreement was governed by the FAA, TAA, or the common law. As a result, we consider both the petition for writ of mandamus and the interlocutory appeal.

ANALYSIS

When, as here, a party resists arbitration, the trial court must first determine whether a valid agreement to arbitrate exists. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Once a valid agreement to arbitrate has been established, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration. *Id.*; *see also In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005).

The parties do not dispute that Lamarre's signature is on the purchase agreement that contains the arbitration provision. Instead, in the trial court Lamarre asserted the defense that she was fraudulently induced into agreeing to arbitration. However, Roicki contends Lamarre's fraudulent inducement claim goes to the contract as a whole, and, therefore, Lamarre's fraudulent inducement defense should have been considered by the arbitrator and not the trial court. Therefore, Roicki asserts the trial court abused its discretion in denying his motion to compel arbitration because it improperly considered Lamarre's fraudulent inducement defense rather than sending it to the abitrator.

As the Court in *In re Labatt* provided, "[t]here are two types of challenges to an arbitration provision: (1) a specific challenge to the validity of the arbitration agreement or clause, and (2) a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provisions is illegal and renders the whole contract invalid." 279 S.W.3d 640, 647-48 (Tex. 2009). "A court may determine the first type of challenge, but a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.*; *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (holding that a defense such as fraudulent inducement must specifically relate to the agreement to arbitrate, not to the contract as a whole, in order to defeat arbitration).

Roicki asserts Lamarre's fraudulent inducement defense goes to the contract as a whole because none of her allegations of fraudulent inducement challenge the validity of the arbitration agreement separate and apart from the entire purchase agreement she signed. *See In re RLS Legal Solutions, LLC*, 221 S.W.3d 629, 631-32. We disagree. Lamarre's contention is that she was fraudulently induced into agreeing to arbitration because she was told that the document she was signing was just a formality and a document required by the state, she was not allowed to read the document, and she was never given a copy of it. In her original petition, Lamarre does not allege she was fraudulently induced into agreeing to the contract as whole and does not challenge any of the other provisions in the purchase agreement. *See In re FirstMerit*, 52 S.W.3d at 756. Lamarre's challenge is not "a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provisions is illegal and renders the whole contract invalid." *See In re Labatt*, 279 S.W.3d at 647-48. Therefore, we conclude Lamarre's fraudulent inducement defense was a specific challenge to the validity of the arbitration agreement, and, therefore, it was proper for the trial court to consider. As a result of the foregoing, we hold the trial court did not abuse its discretion in considering Lamarre's defense of fraudulent inducement, rather than sending the issue to the arbitrator to decide.

## CONCLUSION

As a result of the foregoing, we affirm the trial court's order denying the motion to compel arbitration and deny the petition for writ of mandamus.

Marialyn Barnard, Justice