973 So.2d 485 (2007)
The OPERIS GROUP, CORP., Appellant,
v.
E.I. AT DORAL, LLC, Appellee.
No. 3D07-298.
District Court of Appeal of Florida, Third District.
October 24, 2007.
Rehearing and Rehearing Denied February 25, 2008.
*486 Burstein Associates, P.A. and Bernardo Burstein, Miami, for appellant.
Alfredo G. Duran, Alba Varela, for appellee.
Before RAMIREZ, SUAREZ, and ROTHENBERG, JJ.
Rehearing and Rehearing En Banc Denied February 25, 2008.
ROTHENBERG, Judge.
The Operis Group, Corp. ("Opens") appeals from orders granting the defendant's, E.I. at Doral, LLC ("Doral"), motion for stay pending arbitration and denying Opens' motion for reconsideration. We reverse.
Opens, the plaintiff in this litigation, is a Florida corporation that provides contracting and other services to real estate developers. Doral, the defendant, is a company involved in the construction of the Euro-Suites Hotel at Doral in Miami ("Euro-Suites project"). Juan Sarda ("Sarda"), a licensed Florida contractor and the president of Operis, and Pedro Villar ("Villar"), a managing member of Doral, enjoyed a successful business relationship and worked together on a series of real estate developments before the EuroSuites project. For some time, Sarda and Villar shared an office in Coral Gables, Florida.
In March 2005, Villar, on behalf of Doral, approached Sarda in order to retain Opens to work on the EuroSuites project. Opens claims that it was retained as the primary general contractor, whereas Doral contends that it retained Opens for the limited purpose of clearing the land before construction. Opens completed some work on the EuroSuites project, but ceased operations in July 2005.
Opens subsequently filed suit, alleging that Doral breached an "implied-in-fact and/or oral" contract for the construction of the EuroSuites project, and also included in its complaint, counts of unjust enrichment and quantum meruit. During discovery, Sarda averred that the agreement between Operis and Doral had been reduced to writing, but that his copies were stolen from the office he shared with Villar. In October 2006, Sarda allegedly found a misfiled copy of the EuroSuites project contract ("the alleged contract"), *487 entitled "AIA Document A107-1997." After "finding" the alleged contract, Operis filed a second amended complaint, adding a count for breach of a written contract and attaching a copy of the alleged contract signed allegedly by both Sarda and Villar.
Doral opposed the introduction of the alleged contract, claiming that Villar had never signed it; Doral had not seen the document prior to its production; and that the signature purporting to be that of Villar, was a forgery. Despite claiming that the alleged contract was a forgery, Doral moved to enforce the arbitration provision contained in the alleged contract, and moved for a stay of the court proceedings pending arbitration. The alleged contract contains the following dispute resolution clause:

14.6.1 Claims, disputes or other matters in question between the parties to this Agreement shall be resolved by mediation or by arbitration. Prior to arbitration, the parties shall endeavor to reach settlement by mediation.
The trial court found that even if the alleged contract was a forgery, because the party disputing its validity (Doral) was not objecting to the enforcement of the arbitration provision contained in the alleged contract, the dispute resolution clause was enforceable. The trial court ruled that the parties' dispute over the making of the alleged contract should be resolved by an arbitrator, and entered an order denying Operis' motion for reconsideration and an order staying the court proceedings pending arbitration.
Operis argues that the trial court erred in failing to resolve the issues of whether any agreement between the parties existed or was ever concluded, and if so, whether Doral waived its right to arbitration. We agree. Because the issue of whether Doral waived its right to arbitration is dependent upon the determination of the existence of a valid written contract between the parties, and the trial court did not determine whether the alleged contract containing the arbitration clause was, in fact, entered into by the parties, the trial court was in no position to enforce the arbitration clause contained in the agreement.
Under Florida's arbitration code, the trial court must consider three elements before ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). In the instant case, the parties dispute, and the trial court failed to resolve: (1) whether a valid written agreement containing an arbitration clause was entered into by the parties, and (2) whether Doral waived its right, assuming it had one, to compel arbitration.
In October 2006, Operis produced a copy of the alleged contract which appeared to be signed by representatives of both parties. Doral, however, maintained below, and maintains on appeal, that Villar's signature was forged, and that Doral had never seen the alleged contract until it was produced by Operis during the litigation. Nevertheless, Doral moved to compel arbitration pursuant to the terms of the contract Doral claims is a forgery. Thus, there is a question as to the existence of a written agreement by the parties. In addition to the unresolved issue as to whether a valid written agreement to arbitrate exists, is Operis' claim that Doral waived its right to arbitrate by litigating the case before moving to compel arbitration under the alleged contract. Operis claimed that the alleged contract is a valid agreement between the parties of which Doral had *488 knowledge prior to its production. Operis claimed that because Doral was aware of the alleged contract and its contents, Doral waived any right to compel arbitration by answering Operis' complaint and actively participating in the litigation. These issues must be resolved by the trial court.

WHETHER A VALID AGREEMENT TO ARBITRATE EXISTS
Section 682.03(1), Florida Statutes, (2006), states: "If the court shall find that a substantial issue is raised as to the making of the agreement or provision [to arbitrate], it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application [for arbitration]." Thus, whether the alleged contract containing the arbitration clause was a valid agreement entered into by the parties, is a material issue that the trial court had a statutory duty to resolve before compelling arbitration. By claiming that Villar's signature on the alleged contract was a forgery, Doral raised a substantial issue as to the making of the alleged contract which contains the dispute resolution clause. The trial court, therefore, erred in failing to resolve this threshold issue.
Doral argues that arbitration is mandated because neither party specifically challenged the arbitration provision within the alleged contract, and because, in this case, Doral challenged the validity of the alleged contract itself. We disagree. In support of its argument, Doral relies on Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), and the Florida cases that flow from Buckeye. In Buckeye, the United States Supreme Court held that challenges to the validity of an arbitration agreement come in one of two types. 546 U.S. at 444, 126 S.Ct. 1204. The first type "challenges specifically the validity of the agreement to arbitrate." Id. "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g. the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Id. In Florida, it is now clear that challenges of the first type are to be decided by the court, and challenges of the second type are to be decided by an arbitrator. Rowe Enters., LLC v. Int'l Sys. & Elec. Corp., 932 So.2d 537, 540 (Fla. 1st DCA), review denied, 944 So.2d 345 (Fla.2006).
Doral maintains that because it claims that the alleged contract is a forgery, the challenge goes to the validity of the entire contract, and, thus, the decision is one for the arbitrator. We disagree. The instant case is distinguishable from cases involving challenges to the validity of an entire contract. In the cases involving challenges to the validity of an entire contract containing an arbitration provision (where compelling arbitration would be appropriate), the parties do not dispute the existence of the relevant document and have presumptively agreed to arbitrate any disputes. Rowe, 932 So.2d at 541. In the instant case, Doral steadfastly contends that it did not sign the alleged contract. Thus, the alleged contract is not presumptively valid, and therefore, the alleged contract's very existence as an agreement between the parties, and not its validity as a presumptive agreement, is in dispute. A challenge to the very existence of any agreement between the parties is thus distinguishable from a challenge to the validity of a presumptively existing, signed document.
In Buckeye, the. United States Supreme Court acknowledged that a third potential type of challenge exists, though the Court declined to state whothe court or the arbitratoris to decide the issue. Buckeye, 546 U.S. at 444 n. 1, 126 S.Ct. *489 1204. In these challenges, which the Court specifically described as different than a challenge to a contract's validity, the issue is whether any agreement between the parties was ever concluded. Id. The instant challenge to the alleged contract corresponds most closely to this third type. Because the challenge is to the making of and the existence of a written agreement between the parties, we conclude that pursuant to Florida's arbitration code, which requires the trial court to resolve substantial issues regarding the making of the agreement or provision to arbitrate, and Seifert, 750 So.2d at 636, which requires the trial court to determine whether a valid written agreement to arbitrate exists before submitting the case to arbitration, the issue was one which the trial court was required to resolve.

WHETHER DORAL WAIVED ITS RIGHT TO ARBITRATION
Operis claims that Doral waived the right to compel arbitration by participating in the litigation. Because whether Doral waived its right to compel arbitration is dependent on whether the parties executed the alleged contract, the trial court was required to determine whether there was, in fact, a contract containing an arbitration clause executed by the parties. If the signatures affixed to the alleged contract are the signatures of the parties, then Doral had knowledge of the dispute resolution clause prior to answering Operis' complaint, and by participating in the litigation, Doral would have waived its right to compel arbitration under the contract. See Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005) ("We have long held that a party's contract rights may be waived by actually participating in a lawsuit or taking action inconsistent with that right."). If, as Doral claims, the alleged contract is a forgery and does not represent any meeting of the parties' minds, then Doral never had any contractual foundation upon which to move to compel arbitration. In either situation, the trial court could not properly compel arbitration without making findings as to the existence of a contract entered into by the parties containing an arbitration clause. Thus, the trial court's decision to compel arbitration was premature.

THE PARTIES' ESTOPPEL ARGUMENTS
Our conclusion that before enforcing the arbitration clause the trial court was required to determine whether the parties had, in fact, entered into a written contract containing an arbitration clause, becomes even more compelling in this case because here, both Doral and Operis have raised estoppel arguments. Doral asserts that because all of Operis' claims arise out of the alleged contract and presume that the alleged contract exists, Operis should be equitably estopped from contesting the enforcement of the arbitration provision. Contrarily, Operis asserts that because Doral claims that the alleged contract is a forgery, Doral should be estopped from compelling arbitration under the alleged contract. The resolution of these estoppel arguments rests, as does the waiver argument, on the existence or non-existence of a written agreement between the parties. Because Doral asserts that the alleged contract is a forgery, Doral would be estopped from asserting that arbitration pursuant to the forged alleged contract is mandated, an argument Operis presented to the trial court, and again, on appeal. However, if the alleged contract is not a forgery, then Operis would be estopped from objecting to enforcement of the arbitration clause, unless Operis can establish a waiver of the provision by Doral.
Additionally, when presented with competing estoppel arguments, "one estoppel neutralizes the other, leaving the matter *490 as if neither estoppel had been offered." Fla. Land & Inv. Co. v. Williams, 98 Fla. 1258, 116 So. 642, 644 (1928); see also Astor v. Astor, 120 So.2d 176, 183 (Fla.1960) (O'Connell, J., dissenting) (doctrine applicable in context of marriage and divorce); 28 Am.Jur.2d Estoppel and Waiver § 132 (2000) (stating that one party may be denied the right to assert an estoppel by reason of certain facts creating an estoppel against the asserting party). Because we are presented with opposing estoppel arguments, these arguments neutralize each other, leaving the issue of whether the alleged contract represented an existing agreement between the parties, as one which must be determined by the trial court.

CONCLUSION
Whether the parties entered into or executed a written contract is an issue not to the validity of the alleged contract, but rather as to the making of the contract. That issue is one which must be resolved by the trial court. Because Operis claims that the alleged contract was signed by the parties and represents an agreement by them; Operis raised the issue of whether Doral waived arbitration by litigating the case; and the issue of waiver is dependent on whether the parties executed the alleged contract, the trial court was required to determine whether the parties did execute the agreement. And lastly, because of the equitable estoppel arguments raised by each, the trial court was compelled to resolve the dispute as to the making of the alleged contract. Based upon all three grounds, each standing alone, we find that the trial court erred in compelling arbitration without deciding these threshold issues.
Reversed.