**In re MORGAN STANLEY & CO., INC., Successor To Morgan Stanley DW, Inc., Relator.**

No. 07–0665.

Supreme Court of Texas.

Argued Oct. 15, 2008.

Decided July 3, 2009.

Rehearing Denied Sept. 25, 2009.

Scott Brister and Don R. Willett, JJ., concurred and filed opinions.

Nathan L. Hecht, J., dissented and filed opinion.

Thomas R. Phillips, Baker Botts L.L.P., Austin, TX, David D. Sterling, Brooke Ashley Geren, Baker Botts L.L.P., Houston, TX, for Relator.

Charles T. Frazier Jr., LaDawn H. Conway, Alexander Dubose & Townsend, LLP, Amy B. Ganci, Dolores G. Wolfe, Cowles & Thompson, P.C., Dallas, TX, for Real Party in Interest.

Justice MEDINA delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

In this original mandamus proceeding, the relator seeks to compel arbitration in accordance with its agreement in the underlying case. The other putative party to the agreement resists arbitration on the ground that she lacked the mental capacity to assent to the contract. The question here is whether the court or the arbitrator should decide this issue of capacity. The trial court concluded that it was the proper forum. We agree and, accordingly, deny the petition for writ of mandamus.

## I

Helen Taylor's estate was worth several million dollars in 1999, the year in which she was diagnosed with dementia. That year, she also transferred several of her securities accounts to Morgan Stanley. Each account agreement with Morgan Stanley included an arbitration clause.[1] Over the next few years, Taylor also signed a durable power of attorney in favor of her granddaughter, Kathryn Albers, and a trust agreement, naming Albers as trustee. During this period, Albers made gifts to her mother, her sister, and herself from Taylor's estate.

In 2004, a Dallas probate court appointed Nathan Griffin as guardian of Taylor's estate. By this time, the value of her estate had been significantly reduced. In May 2005, the guardian sued Taylor's granddaughters and others for violation of the Texas Uniform Fraudulent Transfer Act, civil theft, conversion, and for the imposition of a constructive trust. About a year later, Taylor's guardian added Morgan Stanley as a defendant, asserting breach of fiduciary duty, negligence and

---

1. The arbitration provisions in the new account agreements stated:

    ARBITRATION OF CONTROVERSIES
    You agree that all controversies between you or your principals or agents and Morgan Stanley Dean Witter or its agents (including affiliated corporations) arising out of or concerning any of your accounts, orders or transactions, or the construction, performance, or breach of this or any other agreement between us ... shall be determined by arbitration only....

malpractice, unsuitability of investments, violations of the Texas Security Act, and breach of contract. Morgan Stanley moved to compel arbitration of the dispute. The guardian resisted the motion, arguing that Taylor lacked the mental capacity to contract when she signed the account agreements with arbitration clauses and that it was for the court, not an arbitrator, to decide this issue of capacity. Taylor's guardian also subsequently nonsuited the breach of contract claim.[2] The trial court refused to compel arbitration.

Morgan Stanley petitioned the court of appeals for mandamus relief, but the court also declined to order the matter to arbitration. *In re Morgan Stanley & Co.*, 2007 WL 2035128, 2007 Tex.App. LEXIS 5582 (Tex.App.-Dallas July 17, 2007, orig. proceeding) (mem. op.). Morgan Stanley then petitioned this Court. We set the case for argument to consider whether a court or an arbitrator should determine the issue of mental capacity to contract.

## II

The Federal Arbitration Act ("FAA") generally governs arbitration provisions in contracts involving interstate commerce. *See* 9 U.S.C. § 2; *see also In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex.1999). Where the FAA ostensibly controls, as it does here, an agreement to arbitrate is valid except on grounds as exist at law or in equity to revoke the contract. 9 U.S.C. § 2. Section 2 of the FAA provides that courts shall compel arbitration on issues subject to an arbitration agreement. *Id.* Section 4 of the FAA provides that a court may consider only issues relating to the making and

---

**2.** Although the breach of contract claim has been nonsuited, the doctrine of direct benefits equitable estoppel may apply to compel the arbitration of other claims. A person who has not agreed to arbitrate may nevertheless be compelled to do so when the person "seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 741 (Tex.2005); *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex.2005). Equitable estoppel is inapplicable, however, when the benefit is merely indirect; that is, when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law. *In re Kellogg Brown & Root*, 166 S.W.3d at 740–41; *see, e.g., R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 162, 164 (4th Cir.2004) (refusing signatory's request to apply equitable estoppel and compel arbitration against another signatory; the legal duties the signatory builder allegedly violated did not depend on the terms of the contract but arose from the common law and statute and thus signatory resisting arbitration was not seeking a direct benefit of the contract); *InterGen N.V. v. Grina*, 344 F.3d 134, 140, 145 (1st Cir.2003) (refusing signatory's request to apply equitable estoppel to compel nonsignatory to arbitration because nonsignatory had relied upon misleading and inaccurate extra-contractual assurances and sustained losses; nonsignatory alleged state-law causes of action apart from the contract, including intentional deceit, negligent deceit, unfair trade practices, promissory estoppel, tortious interference with advantageous relations, and quantum meruit); *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir.2002) (refusing nonsignatory's request to apply equitable estoppel to compel signatory to arbitration where that signatory's suit did not rely upon the terms of its shareholder agreement or seek to enforce any duty created by the agreement); *see also Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 837 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (refusing nonsignatory's request to apply equitable estoppel and compel arbitration where suit against nonsignatory did not rely on employment contract to assert claims for race discrimination, intentional infliction of emotional distress, or negligent hiring, supervision, and retention); *cf. Fridl v. Cook*, 908 S.W.2d 507, 513 (Tex.App.-El Paso 1995, writ dism'd w.o.j.) (refusing to compel arbitration where signatory party resisting arbitration had alleged fraud claim independent of the contract).

performance of the agreement to arbitrate. 9 U.S.C. § 4. Thus, once a party seeking to compel arbitration has established that there is a valid agreement to arbitrate and that the plaintiff's claims are within the agreement's scope, the trial court must compel arbitration. *Id.; In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999) (per curiam).

Before 1967, however, courts often reasoned that any defense that would render the entire contract unenforceable or void was for the court to decide because if the underlying contract was invalid so too was the agreement to arbitrate. *See generally* Katherine V.W. Stone, ARBITRATION LAW at 242 (2003). The United States Supreme Court rejected that reasoning in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

The issue in *Prima Paint* was whether the court or an arbitrator should decide a claim of fraud in the inducement of the entire contract. *Id.* at 402, 87 S.Ct. 1801. Relying on section 4 of the FAA, the Supreme Court held that a claim of fraud in the inducement of a contract generally, as opposed to the arbitration clause specifically, was for the arbitrator, not the court, to decide. *Id.* at 404, 87 S.Ct. 1801 ("a federal court may consider only issues relating to the making and performance of the agreement to arbitrate"). *Prima Paint* thereby established the "separability" doctrine, explaining that an arbitration provision was separable from the rest of a contract under section 4 and that the issue of the contract's validity was to be determined by the arbitrator unless the challenge was to the agreement to arbitrate itself. *Id.* at 402–04, 87 S.Ct. 1801.

Since *Prima Paint,* we have dutifully followed the separability doctrine that presumptively favors arbitration. *See Southland Corp. v. Keating,* 465 U.S. 1, 15–16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (holding that federal arbitration law created by the FAA applies in state courts). We have held that defenses attacking the validity of a contract as a whole, and not specifically aimed at the agreement to arbitrate, are for the arbitrator, not the court. *See In re RLS Legal Solutions, LLC,* 221 S.W.3d 629, 631–32 (Tex.2007). But we have also recognized that the presumption favoring arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003). We have not, however, previously considered whether the defense of mental incapacity is an attack on the validity of the contract as a whole and therefore a matter for the arbitrator, as Morgan Stanley argues, or a gateway matter concerning the existence of an agreement that must be proven to the satisfaction of the court, as Taylor's guardian argues.

There is some disagreement about what *Prima Paint* requires in this situation. The Fifth Circuit in *Primerica Life Insurance Co. v. Brown,* 304 F.3d 469, 472 (5th Cir.2002), has concluded that the arbitrator should decide a defense of mental incapacity because it is not a specific challenge to the arbitration clause but rather goes to the entire agreement. The Tenth Circuit reached the opposite result in *Spahr v. Secco,* 330 F.3d 1266 (10th Cir.2003), concluding that the "mental incapacity defense naturally goes to *both* the entire contract and the specific agreement to arbitrate in the contract." *Id.* at 1273. Thus, under the Tenth Circuit's view, the mental incapacity defense places the "making" of the arbitration agreement at issue under Section 4 of the FAA, giving the court authority to determine whether the parties have actually agreed to arbitration. *Id.* The Supreme Court has not yet settled this

conflict but rather expressly reserved the question in *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 n. 1, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).

*Buckeye* concerned the defense of illegality. The plaintiffs there claimed that the defendant's check cashing agreement "violated various Florida lending and consumer-protection laws," and was therefore void and illegal ab initio. *Id.* at 443, 126 S.Ct. 1204. Applying Florida law, the Florida Supreme Court agreed that the contract was illegal and void, and refused to compel arbitration. *Id.* at 443, 446, 126 S.Ct. 1204. Applying *Prima Paint*'s doctrine of separability, the U.S. Supreme Court reversed the Florida Supreme Court. *Id.* at 449, 126 S.Ct. 1204.

As it had done in *Prima Paint,* the Supreme Court rejected the notion that the enforceability of the arbitration agreement depended on the distinction between void and voidable contracts. *Id.* at 448, 126 S.Ct. 1204. Instead, the Court reiterated three controlling principles of federal arbitration law. First, that an arbitration provision is severable from the remainder of the contract. *Id.* at 445, 126 S.Ct. 1204. Second, that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445–46, 126 S.Ct. 1204. Third, that federal arbitration law applies in state and federal courts. *Id.* at 446, 126 S.Ct. 1204. The Court concluded that because the plaintiffs challenged "the [a]greement, but not specifically its arbitration provisions," the rule of separability applied, and the arbitration provisions were enforceable "apart from the remainder of the contract." *Id.* at 446, 126 S.Ct. 1204.

Most importantly to our present case, however, was the distinction the Supreme Court drew between issues of validity and issues of contract formation. The Court

noted that an illegality defense, raising the issue of the contract's validity, was different from a formation defense, raising the issue of whether a contract was ever concluded:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to ... whether the alleged obligor ever signed the contract, *Chastain v. Robinson–Humphrey Co.,* 957 F.2d 851 (C.A.11, 1992), whether the signor lacked authority to commit the alleged principal, *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99 (C.A.3, 2000); *Sphere Drake Ins. Ltd. v. All American Ins. Co.,* 256 F.3d 587 (C.A.7, 2001), and whether the signor lacked the mental capacity to assent, *Spahr v. Secco,* 330 F.3d 1266 (C.A.10, 2003).

*Id.* at 444 n. 1, 126 S.Ct. 1204. The Court thus excluded from its analysis several contract-formation-defense issues, including the defense in this case, that the signor lacked the mental capacity to assent.

Although the Supreme Court in *Buckeye* grouped illegality with fraudulent inducement for purposes of *Prima Paint*'s separability doctrine and expressly excluded the issue of mental capacity along with other contract-formation issues from that analysis, the Dissent here concludes that mental capacity is really more like fraudulent inducement, suggesting that the Supreme Court was wrong to include it with the other contract-formation issues. *Compare* 293 S.W.3d at 193 (Hecht, J., dissenting) ("seems to me, lack of capacity is closer to fraudulent inducement"), *with Buckeye,* 546 U.S. at 444, n. 1, 126 S.Ct. 1204. The Dissent reasons that incapacity is different from the other contract-formation issues distinguished in *Buckeye* because a contract signed by an incapacitated person exists subject to ratification or

avoidance by the incapacitated person. 293 S.W.3d at 193. But the Dissent's analysis begs the question of whether a contract exists. As the Fifth Circuit has observed, "where the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir.2004). And, when the issue of mental capacity is raised, the "very existence of a contract" is at issue. *Id.* Because the Supreme Court has grouped mental capacity with the other issues of contract formation, we do so as well.

## III

Several courts have read *Buckeye* to add a third discrete category to the *Prima Paint* analysis, which includes: (1) a challenge to the validity of the contract as a whole, (2) a challenge to the validity of the arbitration provision itself, and (3) a challenge to whether any agreement was ever concluded. *Prima Paint* reserves the first category for the arbitrator and the second category for the court. *Buckeye,* 546 U.S. at 446, 126 S.Ct. 1204. Since *Buckeye,* the federal courts,[3] a state supreme court,[4] and other state appellate courts[5] have generally concluded that the third category involves a threshold inquiry for the court.

**3.** *See Sanford v. Memberworks, Inc.,* 483 F.3d 956, 962–64 (9th Cir.2007) (holding that challenges to whether a contract was concluded must be determined by the court prior to arbitration); *Krutchik v. Chase Bank USA, N.A.,* 531 F.Supp.2d 1359, 1363 (S.D.Fla. 2008) (holding that it is for the court to decide where "the initial formation or existence of a contract, including a disputed arbitration clause is legitimately called into question"); *Toledano v. O'Connor,* 501 F.Supp.2d 127, 140 (D.D.C.2007) ("[This circuit has not addressed] the propriety of district-court adjudication of challenges to the formation of a contract containing an arbitration provision (as opposed to challenges to the formation of the arbitration provision itself). [But, we have] long treated disputes over the formation of an agreement to arbitrate—i.e., whether the parties ever agreed to submit anything to arbitration in the first place—as properly before the district court.") (internal quotation marks omitted); *Foss v. Circuit City Stores, Inc.,* 477 F.Supp.2d 230, 234–35 (D.Me.2007) ("The distinction first articulated in *Prima Paint Corp.* regarding the appropriate role for the court and the arbitrator is not determinative on questions regarding the very formation of a contract.... [A] challenge to whether a contract was ever validly concluded is for the court, and not the arbitrator, to decide."); *Larson v. Speetjens,* NO. C05–3176 SBA, 2006 WL 2567873, at *3, 2006 U.S. Dist. LEXIS 66459, at *11–12 (N.D.Cal. Sept.5, 2006) ("The Supreme Court has distinguished between three categories of challenges to arbitration provisions.... First, if a challenge is

to the contract as a whole, it must be decided by the arbitrator. Second, if a challenge is specifically to the arbitration provision, it must be decided by a court. Finally, if a challenge is to a party's signatory power to the contract, it must be decided by a court.") (internal citations omitted); *see also Fox Int'l Relations v. Fiserv Sec., Inc.,* 418 F.Supp.2d 718, 723–24 (E.D.Pa.2006) (concluding that "after the Supreme Court's *Buckeye* decision, it appears that there are three categories of challenges to arbitration provisions" and that a challenge to a party's signatory power falls under the third category and thus must be decided by a court).

**4.** *Thompson v. Lithia Chrysler Jeep Dodge of Great Falls,* 343 Mont. 392, 185 P.3d 332, 338 (2008) ("the court is the proper body to hear a challenge to the existence of a contract containing an arbitration provision").

**5.** *See Bruni v. Didion,* 160 Cal.App.4th 1272, 73 Cal.Rptr.3d 395, 406 (2008) ("A court, however, still must consider one type of challenge to the overall contract: a claim that the party resisting arbitration never actually agreed to be bound."); *Operis Group, Corp. v. E.I. at Doral, LLC,* 973 So.2d 485, 488 (Fla. Dist.Ct.App.2007) ("A challenge to the very existence of any agreement between the parties is thus distinguishable from a challenge to the validity of a presumptively existing, signed document."); *Rowe Enters. LLC v. Int'l Sys. & Elecs. Corp.,* 932 So.2d 537, 538–41 (Fla.Dist. Ct.App.2006) (stating trial court is required to

Even before *Buckeye*'s comment about contract formation, virtually every court refused to compel arbitration absent the existence of an agreement to arbitrate.[6]

hold hearing on defendant's motion to compel arbitration when plaintiff's principal claimed that he had never seen document containing arbitration clause, and that his signature on that document had been forged); *Rhymer v. 21st Mortgage Corp.*, No. E006–00742–COA–R3–CV, 2006 WL 3731937, at \*3, 2006 Tenn. App. LEXIS 800, at \*9 (Tenn.Ct.App. Dec.19, 2006) (holding that trial court is required to decide mental capacity challenge because federal courts "have generally reasoned that there is a difference between challenging a contract on the basis of a party's status (i.e. mental incapacity) and challenging a contract based on behavior/conduct of a party (i.e. fraudulent inducement)").

6. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429–30 (5th Cir.2004)(holding that federal courts have the authority and responsibility to decide matters where the challenge concerns the "very existence of a contract" or whether a contract with an arbitration clause was concluded) (internal quotation marks omitted); *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir.2003)(holding that "[w]here the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was reached"); *Spahr v. Secco*, 330 F.3d 1266, 1268, 1272–73 (10th Cir. 2003) (holding that courts hear a party's challenge to the whole contract based on the claim that the signor did not have mental capacity to sign); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001) ("[A]s arbitration depends on a valid contract[,] an argument that the contract does not exist can't logically be resolved by the arbitrator...."); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 100–01 (3d Cir.2000) (refusing to compel arbitration where the party seeking arbitration asserted that "the agent who signed the agreement on its behalf lacked authority to do so" because *Prima Paint* presumes an underlying existent agreement); *Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851, 855 (11th Cir.1992) (stating that "*Prima Paint* has never been extended to require arbitrators to adjudicate a party's contention, supported by substantial evidence, that a contract *never existed at all* "); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1136–42 (9th Cir.1991) (refusing to compel arbitration where the plaintiffs claimed individual who signed the agreement lacked the authority to bind the plaintiffs because *Prima Paint* was "limited to challenges seeking to *avoid* or *rescind* a contract" and was inapplicable to "challenges going to the very existence of a contract that a party claims never to have agreed to"); *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 761 (D.C.Cir.1988) ("if the parties disagree as to whether they ever entered into any arbitration agreement at all, the court must resolve that dispute") (internal citation omitted); *I.S. Joseph Co. v. Mich. Sugar Co.*, 803 F.2d 396, 400 (8th Cir.1986) (holding that *Prima Paint* does not apply when a party challenges the whole contract based on the claim that the assignee cannot enforce the contract); *A.T. Massey Coal Co. v. Int'l Union, United Mine Workers of Am.*, 799 F.2d 142, 146 (4th Cir.1986) (refusing to compel arbitration until district court decided question of existence of a contract to arbitrate); *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir.1980) ("A party may, in an effort to avoid arbitration, contend that it did not intend to enter into the agreement which contained an arbitration clause."); *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676–77 (2d Cir.1972) (holding that a party's assertion that it never entered into the contract containing the arbitration clause should be decided by the trial court); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (stating that if a "party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists"); *Am. Med. Techs., Inc. v. Miller*, 149 S.W.3d 265, 270 (Tex.App.-Houston [14th Dist.] 2004, orig. proceeding) (stating that when a party seeks to compel arbitration, a trial court must first determine the existence of a valid agreement to arbitrate); *see also Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 53–54 (1st Cir.2002) (reviewing cases "involving allegations that the contract with the arbitration clause *never* existed"); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (holding that federal policy favoring arbitration does not apply to the determination of whether there is an agreement to arbitrate); *but see Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir.2002) (holding that the *Prima Paint* rule does apply to mental capacity defenses).

The Fifth Circuit's decision in *Primerica*, that the defense of mental incapacity is an issue for the arbitrator, not the court, because it is an attack on the whole contract, stands in stark contrast to these authorities. Moreover, *Primerica* has been roundly criticized,[7] and we aware of no other court that has followed its reasoning, including the Fifth Circuit. Several months after *Primerica*, the Fifth Circuit, in fact, reached a decidedly different result in another case involving the issue of a contract-formation defense to an arbitration clause.

In *Will–Drill Resources, Inc. v. Samson Resources, Co.*, 352 F.3d 211 (5th Cir. 2003), Samson resisted arbitration on the grounds that all parties had not signed the agreement containing the arbitration clause. The case involved several sellers of mineral leases. *Id.* at 213. Some of the sellers had agreed to arbitrate any dispute, and some had never signed the underlying contract. *Id.* at 215. The Fifth Circuit concluded that whether the sellers had signed the agreement went directly to the "making" of the agreement and the party's consent to arbitrate. Noting that arbitration could not be forced upon a party "absent its consent," the court wrote:

> [W]here the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue. A presumption that a signed document represents an agreement could lead to this untenable result. We therefore conclude that where a party attacks the very existence

of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute. 352 F.3d at 219 (internal citation omitted). Similarly, we have concluded that whether an arbitration agreement binds a nonsignatory is a gateway matter to be determined by the court, rather than the arbitrator, unless the parties clearly and unmistakably provide otherwise. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex.2005); *see also In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex.2009) (when "arbitration agreement is silent about who is to determine whether particular persons are bound by the agreement, courts, rather than the arbitrator, should determine the issue").

When deciding federal questions of first impression, we anticipate how the U.S. Supreme Court would decide the issue. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658–59 (Tex.1994). This analysis often draws on the precedents of other federal courts, or state courts, to determine the appropriate answer. Given the overwhelming weight of authority, it is apparent to us that the formation defenses identified in *Buckeye* are matters that go to the very existence of an agreement to arbitrate and, as such, are matters for the court, not the arbitrator. Although the Fifth Circuit reached a different conclusion in *Primerica*, we are not obligated to follow that decision. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate fed-

---

7. *See, e.g.,* Stephen K. Huber, *The Arbitration Jurisprudence of the Fifth Circuit: Round IV*, 39 Tex. Tech L. Rev. 463, 476 (2007) (disapproving *Primerica* as not "sensible" for ignoring the distinction between contract defenses and contract formation); Alan Scott Rau, *Ev-* *erything You Really Need to Know About "Separability" in Seventeen Simple Propositions*, 14 Am. Rev. Int'l Arb. 1, 15–16 (2003) (criticizing *Primerica* as a "bizarre and inexplicable" misreading of the separability doctrine).

eral rule of decision, they are *obligated* to follow only higher Texas courts and the United States Supreme Court."). Instead, we agree that *Primerica* misapplies *Prima Paint*'s separability doctrine:

> Despite casual assumptions to the contrary, *Prima Paint* does not merely preserve for the courts challenges that are "restricted" or "limited" to "just" the arbitration clause alone—this would be senseless; *it preserves for the courts any claim at all that necessarily calls an agreement to arbitrate into question.* To send a dispute to arbitration where "not only" the arbitration clause itself, but "also," in addition, the "entire" agreement is subject to challenge, is to lose sight of the only important question—which is the existence of a legally enforceable assent to submit to arbitration. Someone lacking the requisite mental capacity to contract cannot, I dare say, assent to arbitrate anything at all.

Alan Scott Rau, *Everything You Really Need to Know About "Separability" in Seventeen Simple Propositions*, 14 AM. REV. INT'L ARB. 1, 17 (2003). We agree that *Prima Paint* reserves to the court issues like the one here, that the signor lacked the mental capacity to assent. Accordingly, the trial court did not abuse its discretion in declining to yield the question to the arbitrator.

Relator's petition for writ of mandamus is denied.

Justice BRISTER filed a concurring opinion.

Justice WILLETT filed a concurring opinion.

Justice HECHT filed a dissenting opinion.

Justice O'NEILL did not participate in the decision.

Justice BRISTER, concurring.

Whether a person can avoid an arbitration clause by claiming she was mentally incompetent raises many difficult problems. As the Court notes, the federal courts cannot even agree whether judges or arbitrators should answer the question. I would not try to guess (as the Court does) how the United States Supreme Court may resolve this difficult issue because equitable estoppel renders it irrelevant in this case.

A person "cannot both have his contract and defeat it too."[1] Even those who had nothing to do with an arbitration agreement are bound by it if they seek to gain the benefits of the larger contract in which it is contained.[2] Accordingly, it is irrelevant whether Helen Taylor was mentally incompetent; even if she was, she is still bound to arbitrate because her legal guardian's suit depends entirely on account agreements that contain arbitration clauses.

Every claim Taylor asserts against Morgan Stanley (breach of fiduciary duty, negligence, malpractice, and violations of securities law) has no basis unless Morgan Stanley was her broker. Every legal duty Morgan Stanley owed Taylor arises from the account agreements. Because Taylor's guardian insists that Morgan Stanley violated duties it owed her as a client, he cannot "turn [his] back on the portions of the contract, such as an arbitration clause, that [he] finds distasteful."[3]

---

1. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex.2005).

2. *Id.* at 131; *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex.2001).

3. *Weekley*, 180 S.W.3d at 135 (internal punc-

It is true that in response to the motion to compel arbitration, Taylor's guardian asserted for the first time that *all* her agreements with Morgan Stanley were unenforceable, not just the arbitration clauses. But that is not what her pleadings said either before or after the hearing. The only declaratory judgment she sought in her First Amended Petition is "that any and all *arbitration* agreements entered into by or on behalf of Helen Taylor are void and not enforceable." She did not seek rescission, which is her only remedy if the entire account agreements are invalid due to incompetence.[4] To the contrary, she seeks exemplary damages, statutory damages, and attorney's fees—relief not available with equitable remedies like rescission.

The question whether mental competence is an issue for courts or arbitrators is not as "straightforward" as JUSTICE WILLETT suggests. In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, the United States Supreme Court held that a fraudulent inducement claim specifically directed at an arbitration clause is "an issue which goes to the 'making' of the agreement to arbitrate."[5] In *Buckeye Check Cashing, Inc. v. Cardegna*, the Court affirmed *Prima Paint*, describing it as a case involving a contract's validity rather than contract formation.[6] Because both contract formation and validity fall within "the making of the agreement for arbitration" in section 4 of the Federal Arbitration Act,[7] that section alone gives no definitive answer. For better or worse, there has been so much "judicial parsing or sprucing" in this area that there is no easy answer.

As the arbitration clauses here were embedded in each Morgan Stanley contract, Taylor cannot possibly have been incompetent as to one part but competent as to the rest. As her suit clearly relies on the contracts as a whole, she should have to comply with the arbitration clauses too.

I concede that Morgan Stanley did not assert direct-benefits estoppel in the trial court or on appeal. But of course nothing prevents it from doing so now. Arbitration can be waived by substantial litigation conduct, but there is a strong presumption against waiver and we have never suggested it occurs by initially asserting the wrong grounds.[8] As this case can be decided on clear estoppel lines rather than the murkier line between contract formation and contract validity, I would not hazard a guess that we may have to retract later. Instead, I would deny the petition and remand to the district court for reconsideration.

Justice WILLETT, concurring.

Like the Court, I believe the Federal Arbitration Act (FAA) reserves signatory-power issues like this to judges, not to arbitrators. A mental-incapacity defense goes to whether the parties reached an

---

tuation omitted) (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir.2001)).

4. *See, e.g., Oram v. Gen. Am. Oil Co. of Tex.*, 513 S.W.2d 533, 534 (Tex.1974).

5. 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)("Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to

the 'making' of the agreement to arbitrate— the federal court may proceed to adjudicate it.").

6. 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).

7. *See id.* at 444 n. 1, 126 S.Ct. 1204.

8. *See Perry Homes v. Cull*, 258 S.W.3d 580, 590 (Tex.2008).

agreement in the first place, while defenses like fraudulent inducement attack the validity of an agreement actually made. That is, the former says no agreement exists; the latter concedes existence but contests enforcement.

Like JUSTICE BRISTER, I dislike the murky line between contract formation and contract validity.[1] And while I have no quarrel with the Court's application of the relevant caselaw, I wish such a discussion were unnecessary. Judicial decisions often embroider statutory text with more complexity than is necessary. Sometimes legislative language is clear enough on its own and leaves no room for judicial parsing or sprucing. This case is governed by the Federal Arbitration Act, and Section 4 provides a rather straightforward answer, declaring that disputes relating to the "making" of an arbitration agreement are gateway matters for the court.[2]

Since a mental-incapacity defense goes to whether an agreement was made, the court must decide it. (Indeed, it's difficult to see how an incompetent person can "make" a contract since a "meeting of the minds" cannot happen if one of the minds is incapable of meeting.) The statute is free of nuance and merits a nuance-free

interpretation: The FAA itself declares this issue a judicial one.

Justice HECHT, dissenting.

Before a court can compel arbitration under the Federal Arbitration Act,[1] it must be "satisfied that the making of the agreement for arbitration ... is not in issue".[2] A challenge to the validity of a contract containing an arbitration provision does not put the making of the arbitration provision itself in issue; "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."[3] A challenge to the validity of the arbitration provision itself is for the court to decide; but "when parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court."[4] Thus for example, whether the contract was fraudulently induced,[5] or whether it is usurious and therefore illegal,[6] are issues for arbitration.

But what if the challenge to the contract is that it never came into being? Since "arbitration is a matter of contract",[7] the issue must be one for the court to decide.

1. 293 S.W.3d at 191 (Brister, J., concurring).

2. 9 U.S.C. § 4 (the court shall order the parties to arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue").

1. 9 U.S.C. §§ 1–16.

2. Id. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

3. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445–446, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).

4. Preston v. Ferrer, 552 U.S. 346, ——, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008).

5. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

6. Buckeye, 546 U.S. at 446, 126 S.Ct. 1204.

7. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ("This court has determined that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960))).

Otherwise, an arbitrator would be put in the position of deciding whether he was authorized to decide the parties' dispute, concluding either that he was not authorized, a logical circularity, or that he was, and raising himself by his own bootstraps.[8] Thus, whether a person is bound by a contract he never signed is an issue for the court.[9] So, too, would seem to be issues whether a person's signature on a contract was forged,[10] whether a person's agent was authorized to sign,[11] and whether an offer was withdrawn before a contract was signed.[12]

The issue whether a party who executed a contract lacked the mental capacity to do so is different. The rule in Texas[13] and most other jurisdictions[14] is that the contract exists and can be ratified or avoided. That distinguishes the issue of capacity from issues of signature or authorization. A person who did not sign a contract or authorize its execution cannot enforce it; a person who lacks mental capacity to sign it can. Thus, it seems to me, lack of capacity is closer to fraudulent inducement than to lack of signature or authorization and therefore an issue for the arbitrator rather than the judge. The issue is not "the making of the agreement"; an agreement with a person lacking capacity exists—it happened. Rather, the issue is whether the agreement is valid and enforceable.

The Court reaches the opposite conclusion for two reasons, neither of which is compelling. First, the Court notes that the Supreme Court, in a footnote distinguishing "[t]he issue of the contract's validity ... from the issue whether any agreement ... was ever concluded", listed four cases that had been cited to it involving forgery, authorization, and mental capacity.[15] But the Supreme Court expressed no opinion on any of these issues

8. *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir.2003) ("[W]here the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue."); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir.2001) ("[A]s arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator (unless the parties agree to arbitrate this issue after the dispute arises).").

9. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

10. *Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851, 855 (11th Cir.1992).

11. *Sphere Drake*, 256 F.3d at 591.

12. *Will–Drill*, 352 F.3d at 219.

13. *See Neill v. Pure Oil Co.*, 101 S.W.2d 402, 404 (Tex.Civ.App.-Dallas 1937, writ ref'd) ("It is the settled law in this state, we think, that a deed executed by a person of unsound mind is not void but voidable. Hence, as a voidable deed, it effectually accomplishes the thing sought to be accomplished, until set aside in a suit for rescission or cancellation." (citations omitted)).

14. 53 Am. Jur. 2d *Mentally Impaired Persons* § 150 (2006); 17A C.J.S. *Contracts* § 145 (1999); 5 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 10:3 (4th ed.1993); Restatement (Second) of Contracts § 15 (1981); 1 E. Allan Farnsworth, Contracts § 4.7 (3d ed. 2004).

15. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n. 1, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, *Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851 (C.A.11, 1992), whether the signor lacked authority to commit the alleged principal, *Sandvik AB v.*

and did not note the important difference under some states' laws that mental incapacity does not preclude an agreement. I think the Court overreads the footnote, though of course, one cannot be sure. As Professor Ware has observed:

> Incapacity has long been a defense to the enforcement of a contract formed by a minor or mentally incompetent person. Such incapacity does not prevent the formation of a contract. So under the Supreme Court's distinction between a contract's formation ("whether any agreement ... was ever concluded") and defenses to enforcement ("the contract's validity"), incapacity plainly falls in the latter category and thus should be resolved by arbitrators rather than courts. Yet the Supreme Court in *Buckeye* grouped incapacity together with lack of assent and agency, both of which fall into the former category (formation) and both of which, *First Options* held, are resolved by courts rather than arbitrators. So it is possible that—when presented with an incapacity case—the Court will continue to group incapacity with lack of assent and agency and treat them all as questions for courts, rather than arbitrators.... Time will tell.[16]

Second, as between the two cases on the issue before us, the Tenth Circuit's decision in *Spahr v. Secco*,[17] and the Fifth Circuit's decision in *Primerica Life Ins. Co. v. Brown*,[18] the Court picks *Spahr* because the Fifth Circuit reached "a decidedly different result" in *Will–Drill Resources, Inc. v. Samson Resources Co.*[19] and *Primerica* has been criticized for misapplying the separability doctrine. But *Will–Drill* repeatedly cites *Primerica* and discusses it approvingly,[20] and the results in the two cases are entirely consistent. Primerica holds that the issue whether a contract, though made, is invalid is for the arbitrator; *Will–Drill* holds that the issue whether a contract was ever made is for the court. And even if *Primerica* was mistaken in concluding that capacity was an issue for arbitration *simply because* it was a challenge to a contract as a whole, that does not mean that the result was incorrect. Again, Professor Ware summarizes:

> [C]ourts would hear questions about mutual assent, consideration, and authority to assent on behalf of others, while sending to arbitrators questions about misrepresentation (fraud in the inducement), mistake, duress, undue influence, incapacity, unconscionability, impracticability, frustration of purpose, the statute of frauds, the statute of limitations, illegality (or "public policy"), and expiration or termination. However, these latter issues are sent to the arbitrator only if they are challenges to the container contract as a whole; if they are "directed to the arbitration clause itself," then they are heard by courts.[21]

Apart from the merits of the issue, there is another reason to hold that mental incapacity is for the arbitrator: the Fifth Circuit has done so. This Court has empha-

---

*Advent Int'l Corp.*, 220 F.3d 99 (C.A.3, 2000); *Sphere Drake Ins. Ltd. v. All American Ins. Co.*, 256 F.3d 587 (C.A.7, 2001), and whether the signor lacked the mental capacity to assent, *Spahr v. Secco*, 330 F.3d 1266 (C.A.10, 2003).'').

**16.** Stephen J. Ware, *Arbitration Law's Separability Doctrine after Buckeye Check Cashing, Inc. v. Cardegna*, 8 NEV. L.J. 107, 118–119 (2007) (footnotes omitted).

**17.** 330 F.3d 1266 (10th Cir.2003).

**18.** 304 F.3d 469, 471 (5th Cir.2002).

**19.** 352 F.3d 211, 219 (5th Cir.2003).

**20.** *Id.* at 214–215, 218 n. 41–42.

**21.** Ware, *supra* note 16, at 115–116 (footnotes omitted).

sized in the past that "it is important for federal and state law to be as consistent as possible in [applying the FAA], because federal and state courts have concurrent jurisdiction to enforce the FAA." [22] Federal courts in Texas must follow the Fifth Circuit, and state courts must follow this Court. After today, whether an issue of mental capacity is for the court or arbitrator in the first instance will depend on whether arbitration is sought in state or federal court. Today's decision encourages the forum-shopping the Court has tried hard to avoid.

As JUSTICE BRISTER points out, the matter may end up being a small one. Helen Taylor's guardian initially sued for breach of her contract with Morgan Stanley, then dropped that claim when he realized he could not stand on the contract and disavow the arbitration provision at the same time. The guardian now sues Morgan Stanley for breach of fiduciary duty arising out of the relationship between Taylor and Morgan Stanley, for recommending unsuitable transactions in violation of state securities laws, and for negligence. But the relationship between Taylor and Morgan Stanley was created and defined by their contract. If the guardian proves the contract was invalid, and Taylor and Morgan Stanley were simply strangers, it is not clear what duty Morgan Stanley owed or breached. The Court goes out of its way to work the guardian through the problems he has made for himself,[23] but in repudiating any contract to avoid arbitration, he may well have cut off his arbitration nose to spite his litigation face.

I respectfully dissent.

---

**22.** *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 739 (Tex.2005).

**23.** *Ante* at ——.