# Supreme Court of Texas

No. 20-0782

Baby Dolls Topless Saloons, Inc., Burch Management Company, Inc., BDS Restaurant, Inc., and TTNA, Inc.,

*Petitioners*,

v.

Gilbert Sotero, as the Representative of the Estate of Stephanie Sotero Hernandez, Eduviges Chapa III as Next Friend of A.C.C., a Minor, and Ivan Hernandez, Individually and as Representative of the Estate of Stephanie Sotero Hernandez, Deceased,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**PER CURIAM**

A divided court of appeals held in this case that because the use of three terms in the parties' contract—"relationship," "license," and "this agreement"—is not always perfectly clear, there was no meeting of the minds, and both the contract and its arbitration provision are unenforceable. We reverse the court of appeals' judgment and remand

the case to the trial court with instruction to grant the motion to compel arbitration.

Stephanie Sotero Hernandez was tragically killed in a high-speed crash while riding in a car driven by Mayra Naomi Salazar in the early morning hours shortly after the two adult entertainers had left work at Baby Dolls Topless Saloons (the Club). Members of her family (the Family)[1] sued the Club[2] for wrongful death and survival damages, alleging that the Club continued serving Salazar alcohol after knowing she was clearly intoxicated.

Almost two years earlier, Hernandez and the Club had signed a 12-page contract—referred to throughout the written contract as "this agreement"—giving Hernandez a "revocable license . . . and non-exclusive right to use and occupy the designated portions of the [Club's premises]" for "the performing of live erotic dance entertainment and related activities." The contract contained a broad arbitration provision "pursuant to the Federal Arbitration Act." In response to the Family's suit, the Club moved to compel arbitration.[3] The trial court denied the motion in a brief order without explanation. A divided court of appeals

---

[1] Plaintiffs, respondents here, are Hernandez's father, for himself and as representative of Hernandez's estate, and the father of her minor child, for himself and the child.

[2] Defendants, petitioners here, are Baby Dolls Topless Saloons, Inc.; Burch Management Co., Inc.; BDS Restaurant, Inc.; and TTNA, Inc. We refer to them collectively as the Club. The Family also sued Salazar, but the record does not reflect whether she ever made an appearance.

[3] Whether the arbitration provision applies to all four defendants is not at issue in this Court.

affirmed. ___ S.W.3d ___, 2020 WL 4915436, at *1 (Tex. App.—Dallas Aug. 21, 2020). The Family argued that because of the contract's lack of definiteness and uncertainty in its use of the terms relationship, license, and this agreement, "the relationship [between Hernandez and the Club] loses meaning." The court of appeals agreed.

Under the Federal Arbitration Act (FAA),[4] a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement. *E.g.*, *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999). If one party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists, which is a question of law subject to de novo review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). A party can challenge (1) the validity of the contract as a whole, (2) the validity of the arbitration provision specifically, and (3) whether an agreement exists at all. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018) (citing *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 187 (Tex. 2009)).

As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract—the separability doctrine. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). For that reason, a challenge to the larger contract's validity—the first type above—is determined by the arbitrator. *See id.*

---

[4] The Family argued in the trial court and court of appeals that the arbitration provision is not subject to the FAA because Hernandez's relationship with the Club did not involve interstate commerce. That argument was not addressed by the court of appeals opinion, nor was it briefed here, and we need not consider it.

3

at 445-46.  The second type of challenge—to the validity of the arbitration provision specifically—is for the court to decide unless clearly and unmistakably delegated to the arbitrator.  *See Robinson v. Home Owners Mgmt. Enters.*, 590 S.W.3d 518, 525 (Tex. 2019). Challenges of the third type—that the contract "never came into being"[5]—are decided by the court.  *RSL Funding*, 569 S.W.3d at 124. The parties agree.

The Family argues,[6] and the court of appeals agreed, that four provisions in the contract demonstrate that "the parties' minds could not have met regarding the contract's subject matter and all its essential terms such that the contract is not an enforceable agreement." *See* 2020 WL 4915436, at *6.

1.  "This **AGREEMENT** is entered into by the **LICENSOR** and **LICENSEE** for the leasing of certain portions of the **Premises** and the grant of **License** related thereto . . . ."

2.  "[T]he business relationship created between the Club and the **Licensee** is that of (a) Licensor/Licensee and (b) landlord and tenant . . . and . . . this relationship is a material . . . part of this **Agreement**."

3.  "This **Agreement** . . . shall terminate on December 31 [2017] . . . .  The **License** shall thereafter be automatically extended for successive one year periods running from January 1 though December 31 of each year thereafter."

---

[5] *In re Morgan Stanley*, 293 S.W.3d at 192 (Hecht, J., dissenting).

[6] The Club contends that the Family has not preserved its argument that the contract was unenforceable because it was not raised in the trial court.  The court of appeals held that the Family had not waived its argument.  2020 WL 4915436, at *5.  We assume without deciding that the Family has preserved the argument.

4

4. "**Licensee** materially breaches this **Agreement** by . . . [c]laiming the business relationship with the **Club** as being other than that of a landlord and tenant."

The court of appeals reasoned:

"This Agreement" and "the License" are treated separately in some instances, including for termination purposes, but are specifically combined in others. Both terms are also used elsewhere throughout the contract, with "this Agreement" appearing in the arbitration provision and nearly all other provisions. Rather than merely presenting an ambiguity that could potentially be resolved by reconciling particular conflicting provisions, this disparity precludes certainty and definiteness as to the meaning of those two terms throughout the contract, including in the arbitration provision.

*Id.* (internal punctuation omitted).

We set out guiding principles for determining whether contract terms are sufficient to constitute an enforceable contract in *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231 (Tex. 2016). First, courts cannot rewrite the parties' contract but must construe it as a whole to determine the parties' purposes when they signed it. *Id.* at 239. Second, courts should construe contracts to avoid forfeitures, which are disfavored under Texas law, and instead find terms to be sufficiently definite whenever the language is reasonably susceptible to such an interpretation. *Id.* And third, when courts construe agreements to avoid forfeiture, they may imply terms that can be reasonably implied. *Id.*

Applying these principles, we focus specifically, as the court of appeals did, on the third contract provision referenced above—that the parties' "[a]greement shall terminate on [December 31, 2017]" and "[t]he license shall thereafter be automatically extended for successive one[-]

5

year periods[.]" 2020 WL 4915436, at *6 (internal punctuation, capitalization, and emphasis omitted). This provision—referred to by the Club and the court of appeals' dissent as the contract's duration clause—can be read as an (albeit unartfully drafted) automatic renewal clause whereby the parties' agreement renews in step with Hernandez's license. Construing the contract as a whole supports this reasonable view. For instance, the contract's duration clause makes clear that Hernandez's license is to "be automatically extended" until the parties say otherwise. But the license cannot be untethered from the agreement. Indeed, the duration clause refers the parties to additional portions of the contract for examples of "License Termination" events. This reference to additional contract provisions indicates that the agreement itself contains the terms describing and governing the license. A license-but-no-agreement reading would be unreasonable and fail to comport with a license's very nature—"an authority to do a particular act, or series of acts, upon another's land, without possessing any estate therein." *License*, BLACK'S LAW DICTIONARY (11th ed. 2019), (quoting 2 JAMES KENT, COMMENTARIES ON AMERICAN LAW 452-53 (George Comstock ed., 11th ed. 1866)). Without the benefit of the contract's additional provisions defining which acts or series of acts are allowed under the license, the license becomes meaningless.

The Family's argument, and the court of appeals' holding, that Hernandez and the Club never had a meeting of the minds on the contract blinks the reality that they operated under it for almost two years, week after week, before Hernandez's tragic death. We hold that the parties formed the agreement reflected in the contract they signed.

6

The Family concedes, as it must, that the contract's arbitration provision clearly and unmistakably delegates threshold arbitrability questions to the arbitrator. The contract states, in bolded and capitalized font, that "[a]rbitration shall be the sole forum to determine the validity, scope and brea[d]th of this Agreement." The Family's argument regarding the scope of the provision is for the arbitrator to resolve. We "must . . . compel arbitration so the arbitrator may decide gateway issues the parties have agreed to arbitrate." *RSL Funding*, 569 S.W.3d at 121 (citing *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008)).

Finally, the Family argues in the alternative that even if "a valid contract existed until December 31, 2017, no contract existed after that date" because it had expired according to its own terms. This question, too, is for the arbitrator. The Family's alternative argument necessarily assumes that a contract formed, and it does not challenge the arbitration agreement's validity. Therefore, the separability doctrine reserves to the arbitrator a question of this nature, for expiration is not a contract formation challenge—it is instead a challenge to the continued validity of the parties' initial agreement.

\*    \*    \*    \*    \*

Accordingly, without hearing oral argument, pursuant to TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment and remand the case to the trial court with instruction to grant the motion to compel arbitration.

**OPINION DELIVERED:** March 18, 2022

7