

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00077-CV

_____

RICHARD W. MONCRIEF AND MARSHALL M. SEARCY, INDIVIDUALLY AND
IN THEIR RESPECTIVE CAPACITIES AS SUCCESSOR GENERAL PARTNERS OF
MONCRIEF FAMILY PARTNERSHIP, L.P. AND TRUSTEES OF THE W.A.
MONCRIEF, JR. MANAGEMENT TRUST, AND ON BEHALF OF THE
MANAGEMENT TRUST AND MFP, Appellants

V.

TOM OIL MONCRIEF, GLORIA MARIE MONCRIEF, AND GARY R. ALLEN,
Appellees

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-320546-20

Dissenting Opinion by Justice Birdwell

**DISSENTING OPINION**

Because the trial court—not an arbitrator—should decide the issue of capacity to enter a contract containing an arbitration clause, *see In re Morgan Stanley & Co.*, 293 S.W.3d 182, 183 (Tex. 2009) (orig. proceeding), I dissent.

Appellants Dick and Marshall, identified as Partners under the Fifth Amendment of the MFP Agreement, argue in the first of their three issues[1] that the trial court abused its discretion by signing a temporary injunction that kept them from proceeding to arbitration when Appellees Tom, Gloria, and Gary, identified as Partners under the Fourth Amendment of the MFP Agreement, did not challenge the arbitration clause's validity, the arbitration clause is enforceable and binding, and the arbitration clause covers their dispute. Appellants identify the dispute's merits as "whether the Fifth Amendment is invalid because Tex lacked mental capacity, or was unduly influenced, to sign it."

Appellees state that the evidence confirms that no agreement to arbitrate exists as to Dick and Marshall because evidence "suggests the alleged Fifth Amendment to the MFP Partnership Agreement, upon which Dick[ ] and Marshall relied to invoke

---

[1]Appellants also challenge the sufficiency of the evidence to support the temporary injunction and argue that the trial court abused its discretion by failing to grant their motion to compel arbitration and stay litigation.

arbitration in the name of MFP, is void *ab initio* because Tex was incapacitated or was acting as a result of undue influence when he signed it."[2]

The Fourth Amendment and Fifth Amendment each expressly ratify and affirm the terms and provisions of the 2010 MFP Agreement, which contains the arbitration clause. The arbitration clause states, in pertinent part,

> If at any time during the existence of the Partnership, any question, disagreement, difference or controversy shall arise *between the Partners* concerning the Partnership, or its affairs, transactions, business or accounts, or the meaning or interpretation of this Agreement, or the rights, duties or obligations of the Partners, then *any Partner* may cause such question, disagreement, difference or controversy to be submitted to and determined by arbitration, in accordance with the rules then in effect of the American Arbitration Association. . . . [Emphases added.]

The 2010 MFP Agreement defines "Partners" as "the General Partners and the Limited Partners, and such other Persons who become Partners in accordance with the terms of this Agreement." It defines "Agreement" as "[t]his Amended and Restated Limited Partnership Agreement, as the same may be amended, or further amended and restated, from time to time."

The Agreement and its subsequent amendments identify the Partners. *See N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 602 (Tex. 2016) (explaining contract

---

[2]However, Appellees principally couch the issue as whether the trial court or arbitrator should decide the enforceability of the arbitration clause by Appellants as non-signatories to the MFP Agreement. *See Jody James Farms, JV v. Altman Grp, Inc.*, 547 S.W.3d 624, 629 (Tex. 2018) ("Determining whether a claim involving a non-signatory must be arbitrated is a gateway matter for the trial court, not the arbitrator, which means the determination is reviewed de novo rather than with the deference that must be accorded to arbitrators.").

construction to determine "the true intent of the parties as expressed by the plain language of the agreement"). Each amendment ratifies and affirms the 2010 MFP Agreement as modified.

The supreme court has already determined that a court, not an arbitrator, should decide whether a party lacks the mental capacity to assent to a contract containing an arbitration clause. *Morgan Stanley*, 293 S.W.3d at 183. In *Morgan Stanley*, in 1999, Helen Taylor transferred several of her securities accounts to Morgan Stanley, and each account agreement contained an arbitration clause; she was also diagnosed with dementia that year. *Id.* In 2004, a guardian of the estate was appointed for Taylor, and the guardian sued—among others—Morgan Stanley, alleging breach of fiduciary duty, unsuitability of investments, and related claims. *Id.* at 183–84. Morgan Stanley moved to compel arbitration, and Taylor's guardian resisted on the basis that Taylor had lacked the mental capacity to contract when she signed the account agreements containing arbitration clauses. *Id.* at 184. The trial court refused to compel arbitration, and—on petition for writ of mandamus—the intermediate appellate court also declined to do so. *Id.*

On subsequent petition for writ of mandamus, the supreme court noted that it had previously recognized that the presumption favoring arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *Id.* at 185 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). The court observed that the United States Supreme Court had also drawn a

distinction between the issues of contract validity and contract formation. *Id.* at 186

(citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1, 126 S. Ct. 1204,

1208 n.1 (2006)). In *Buckeye*, the Supreme Court addressed the distinction, stating,

> The issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to . . . whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.

546 U.S. at 444 n.1, 126 S. Ct. at 1208 n.1 (citations omitted).

Based on this language, our supreme court concluded that the Supreme Court

had "thus excluded from its analysis several contract-formation-defense issues,"

including that the signor lacked the mental capacity to assent. *Morgan Stanley*, 293

S.W.3d at 186. This is because when the issue of mental capacity is raised, the

contract's very existence is at issue; accordingly, it is an issue for the court—not an

arbitrator—to decide. *Id.* at 187, 189;[3] *see RSL Funding, LLC v. Newsome*, 569 S.W.3d

---

[3]The supreme court noted that the Fifth Circuit had reached the opposite conclusion—that an arbitrator should decide a mental-incapacity defense because it is not a specific challenge to the arbitration clause but rather goes to the entire agreement. *Morgan Stanley*, 293 S.W.3d at 185 (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002)). But it observed that the *Primerica* decision had "been roundly criticized" as well as contradicted by the same court in *Will-Drill Resources, Inc. v. Samson Resources. Co.*, 352 F.3d 211, 219 (5th Cir. 2003). *Morgan Stanley*, 293 S.W.3d at 189. In *Will-Drill*, the Fifth Circuit noted that if the very existence of an agreement is challenged, ordering arbitration "could result in an arbitrator deciding that no agreement was ever formed," resulting in the arbitrator's never having had authority to decide the issue. 352 F.3d at 219. Thus, the Fifth Circuit concluded "that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." *Id.* Our supreme court

5

116, 124 (Tex. 2018) ("*Prima Paint*[4] does not encompass contract-formation challenges. Contract formation defenses—such as . . . whether the signor had capacity to assent—are thus threshold issues to be decided by the court." (citations omitted)); *Leland Pennington, Inc. v. Bulls*, No. 02-20-00282-CV, 2021 WL 832690, at *3 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op.) (noting that "whether an arbitration agreement exists is a threshold matter to be determined by the trial court"); *Doskocil Mfg. Co. v. Nguyen*, No. 02-16-00382-CV, 2017 WL 2806322, at *4 (Tex. App.—Fort Worth June 29, 2017, no pet.) (mem. op.) (stating that one of the three ways to challenge an arbitration provision is "by challenging the contract's formation []such as by a claim that . . . the signor lacked mental capacity[]" and that this challenge is decided by the court); *see also Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 117 (Tex. App.—El Paso 2018, no pet.) (noting that a party seeking to compel arbitration must first establish the existence of a valid arbitration

---

opted not to follow *Primerica*, holding that the Fifth Circuit in that case had misapplied the separability analysis set out in *Prima Paint Corp. v. Flood & Conklin Manufactoring Co.*, 388 U.S. 395, 402–04, 87 S. Ct. 1801, 1805–06 (1967). *Morgan Stanley*, 293 S.W.3d at 189–90.

[4]In *Prima Paint*, the Supreme Court held that if the claim is fraud in the inducement of the arbitration clause—an issue that goes to the making of the agreement to arbitrate—then the court may adjudicate it. 388 U.S. at 403–04, 87 S. Ct. at 1806. If the claim is fraud in the inducement of the contract generally, however, then the question goes to the arbitrator. *Id.* at 404, 87 S. Ct. at 1806.

6

agreement, a burden that is evidentiary, and a contract-formation question that is reviewed de novo).[5]

Both the Federal Arbitration Act and the Texas Arbitration Act require the existence of an agreement to arbitrate to be proven to the court before the court must compel arbitration. *RSL Funding*, 569 S.W.3d at 124 (citing 9 U.S.C.A. § 4; Tex. Civ. Prac. & Rem. Code Ann. § 171.021(b)); *see In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) ("In determining validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts."); *see also Wagner v. Apache Corp.*, 627 S.W.3d 277, 284 (Tex. 2021) (explaining that the presumption in favor of arbitration arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists); *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021) ("To compel arbitration, a party must prove that a valid arbitration agreement exists.").

Whether a valid agreement to arbitrate exists is a question of law subject to de novo review. *See Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 586 (Tex. 2022) (acknowledging that challenges claiming that a contract "never came into

---

[5]The *Ridge* court conceptualized the arbitration analysis as a three-step inquiry: (1) Did a contract form?, (2) If a contract formed, do the arbitration covenants delegate contract-validity issues to the arbitrator?, and (3) If the arbitration clause delegates contract-validity questions to the arbitrator, is the party resisting arbitration leveling complaints about the validity of the arbitration clause specifically, or the validity of the "container" contract (i.e., the contract containing the arbitration clause) as a whole? 564 S.W.3d at 119–20. For purposes of our analysis, the parties are still on the first step regarding Tex's capacity and whether a contract was formed under the MFP Agreement as modified by the Fifth Amendment.

being" are decided by the court); *see also Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 203 (Tex. App.—Fort Worth 2015, no pet.); *see generally Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 480 (Tex. 2022) ("Because the parties here dispute whether their arbitration agreement continued to exist after the 2012 settlement agreement, we agree with the trial court and court of appeals that courts must decide that issue.").

Appellants argue that *Morgan Stanley* does not apply because Appellees do not contend that Tex lacked mental capacity when he signed the MFP Agreement in 2010. They refer us to *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). *Henry* involved an arbitration provision in short-term loan contracts but did not question the parties' capacity to enter the contracts. *Id.* at 113–19. To the contrary, the parties in that case argued about whether the claims fell within the arbitration agreement's scope, *id.* at 115–16, and whether the lender had impliedly waived its right to arbitration by becoming the complainant in a number of bad-check criminal prosecutions, *id.* at 116–19. The court acknowledged that a party seeking to compel arbitration must first establish the existence of a valid arbitration agreement. *Id.* at 115. That party must also establish that the claims at issue fall within the agreement's scope before the burden shifts to the party opposing arbitration to prove an affirmative defense to the provision's enforcement. *Id.* Here, unlike in *Henry*, the first part of the analysis—the existence of a valid arbitration agreement—is outcome determinative.

Appellants nonetheless argue that the arbitration clause is binding on both Appellants and Appellees "because they all claim to be Successor General Partners (or a Substituted Limited Partner) of MFP, and the Dispute is within the scope of the Arbitration Clause," that "[t]he parties' conflicting positions comprise the merits of the Dispute," and that the MFP Agreement "makes the Arbitration Clause binding on any party *claiming* to be a General or Limited Partner of MFP." [Emphasis added.] And the majority has accepted the argument that, because the 2010 Agreement's arbitration provision is undisputedly a term of both the Fourth and the Fifth Amendments, regardless which amendment controls, the "parties" to the "unamended" arbitration clause are subject to its requirements. But amending the "parties" to the 2010 Agreement amends the application of the arbitration clause. If the Fifth Amendment is invalid because Tex lacked capacity, then the "parties" to the Fifth Amendment are not "parties" to the 2010 arbitration clause because arbitration is to be between the parties to the Agreement. Changing the parties to the Agreement changes the parties to whom the arbitration provision applies, and the parties to the Fourth Amendment and the Fifth Amendment are mutually exclusive except for the one common party named in both. Stated differently, the parties identified by the Fifth Amendment cannot, as a matter of law, become parties to the 2010 arbitration clause unless and until their validity as parties is established, which requires an adjudication of Tex's capacity.[6]

---

[6]Further, Tex's capacity is the subject of litigation in the probate courts, *see In re*

Tex's capacity is a threshold issue for the trial court to determine because if Tex lacked capacity to enter the Fifth Amendment, then the Fourth Amendment remains in effect as the last formed agreement. Because the majority concludes otherwise, I dissent and would reach Appellants' remaining two issues.

/s/ Wade Birdwell
Wade Birdwell
Justice

Delivered: May 18, 2023

---

*Estate of Moncrief*, Nos. 02-23-00021-CV, 02-23-00058-CV (probate court cause number 2021-PR004259-2-B), and no one has argued that his testamentary capacity is meaningfully different from his capacity to contract during the same time frame.